OMAHA STREET RAILWAY COMPANY v. MARGARET CRAIG.

FILED MARCH 6, 1894. No. 5519.

1. **Negligence:** QUESTION OF LAW. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury; but where the facts are such that all reasonable men must draw the same conclusion from them, the question of negligence is one of law for the court. *Grand Trunk R. Co. v. Ives*, 144 U. S., 408, and authorities in support of this rule, collated in opinion, followed.

2. **Carriers:** NEGLIGENCE. Whether alighting from a moving train constitutes negligence or not is a fact to be determined by the jury, taking into consideration all the circumstances in evidence in the case.

3. **Negligence** is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done.

4. **Street Railways:** PERSONAL INJURIES: NEGLIGENCE: CONTRIBUTORY NEGLIGENCE: REVIEW OF EVIDENCE. Plaintiff sued the defendant, a street railway company, for damages for injuries she alleged she sustained through the negligence of defendant's servants while a passenger on its cars. The car on which plaintiff rode was an open one, having seats crosswise, and on either side a platform on which persons stepped in entering or leaving the car. At the end of each seat was an upright provided with a hand-hold. Plaintiff testified that on entering the car she informed the conductor that she wished to alight at Cass street, to which he answered, "Yes, ma'am;" that when the car reached Cass street crossing she rang the bell, the gripman applied the brake and brought the car almost to a standstill; that thinking it would stop every instant, without using the hand-hold, she stepped onto the platform preparatory to stepping onto the street when the car came to a full stop, and while in that position and seen by the gripman, he released the brake and suddenly accelerated the car's speed with a jerk, which threw plaintiff onto the street. *Held*, (1) Whether plaintiff was guilty of contributory negligence in stepping onto the platform of the car while in motion, and in not using the hand-holds on the uprights, were questions of fact for the jury; (2) that the jury's finding that plaintiff was thrown from the platform by the cause and in the manner she testified, would not be set aside as not supported by the evidence because two witnesses testified that she stepped from the platform onto the street, nor because two witnesses swore there was no sudden acceleration of the speed of the car, and three witnesses swore that they did not observe any.

5. **Conflicting Evidence:** REVIEW. This court will not weigh conflicting evidence nor pass judgment upon the credibility of witnesses.

6. **Instructions.** Certain instructions given by the trial court to the jury set out in the opinion and approved.

7. **Negligence:** INSTRUCTIONS. Such expressions as "slight neg-

ligence" and "slight want of ordinary care" should never be used in instructions to juries, as such expressions tend to obscure and confuse what should be stated in plain and concise language.

8. **Jurors:** QUALIFICATIONS. To qualify a person to act as a juror he should not only be unbiased and unprejudiced against all parties to the suit, but he should stand indifferent as to the success of either party thereto; and a person called as a juror who testifies that his acquaintance with one of the parties will interfere with his judgment and finding in the case should be excused.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

The facts appear in the opinion.

*John L. Webster*, for plaintiff in error:

It is negligence to leap from a moving street car. (*Hagan v. Philadelphia & G. F. R. Co.*, 15 Phila. [Pa.], 278.)

If passenger signaled the car to stop and the car immediately began to slow down speed, and the passenger, without waiting for the car to stop, did step from the car while in motion and was injured, he cannot recover. (*Harmon v. Washington & G. R. Co.*, 6 Mackey [D. C.], 64.)

A passenger in the act of stepping down from the front platform of a street car, and when his foot was nearly on the ground the driver let go the brake and the car started, and he was thrown down and injured, cannot recover. (*Brown v. Congress & Baker Street R. Co.*, 49 Mich., 153.)

The boarding or alighting from a moving train is presumably and generally a negligent act *per se.* It is not sufficient to rebut the presumption of negligence that the trainmen acquiesced in the action of the passenger, or that the company failed to stop at the appointed place. (*Solomon v. Manhattan R. Co.*, 103 N. Y., 437.)

Where one is injured by attempting to get off a moving street car, unless some act of negligence on the part of the

company or its servants producing the injury is shown, it is not error to enter a nonsuit. (*Stager v. Ridge Avenue P. R. Co.*, 119 Pa. St., 70.)

In a case where it appeared a person attempted to board a street car while in motion, and that his foot slipped from the step caused by a jolt of the car, nonsuit was properly entered. (*Reddington v. Philadelphia Traction Co.*, 132 Pa. St., 154.)

To alight from a moving street car without notice to the person in charge forbids recovery, though the injury resulted from the sudden starting of the car. (*Nickols v. Middlesex R. Co.*, 106 Mass., 465.)

To alight after ringing bell to stop, and failure of car to stop, but only slackened speed, is not justified. (*West End & Atlantic Street R. Co. v. Mozely*, 79 Ga., 463.)

The fact that the train is about to pass the place of the passenger's destination without stopping will not justify him in jumping from the train. (*Reibel v. Cincinnati, I., St. L. & C. R. Co.*, 114 Ind., 476.)

In alighting from a moving train, it is not sufficient to prove that a prudent person would have done the same thing under the same circumstances, but it must always be made to appear that the company did some act or was guilty of some negligence which contributed to the injury. (*Gulf, C. & S. F. R. Co. v. Wallen*, 65 Tex., 568.)

It is contributory negligence to jump from a moving train just before it has stopped, but while train is being brought to a stop. (*Savannah, F. & W. R. Co. v. Watts*, 82 Ga., 229.)

Where conductor promised to let passenger off, not at a station but at a street crossing, and then neglected to stop at the street crossing, and passenger got off while train was in motion, no recovery can be had in suit for damages for injury sustained. (*Watson v. Georgia Pacific R. Co.*, 81 Ga., 476.)

It is negligence for a passenger to jump from a railroad

Omaha Street R. Co. v. Craig.

train moving from six to twelve miles an hour, although the conductor advised him that it was safe. (*Bardwell v. Mobile & O. R. Co.*, 63 Miss., 574; *Chicago & A. R. Co. v. Randolph*, 53 Ill., 510; *Baltimore & P. R. Co. v. Jones*, 95 U. S., 439; *Dowell v. Vicksburg*, 61 Miss., 579; *Lake Shore & M. S. R. Co. v. Bangs*, 47 Mich., 470; *Burrows v. Erie R. Co.*, 63 N. Y., 556; *Morrison v. Erie R. Co.*, 56 N. Y., 302; *Vimont v. Chicago & N. R. Co.*, 71 Ia., 58; *Missouri P. R. Co. v. Texas & P. R. Co.*, 36 Fed. Rep., 879.)

Attempting to board a train running six miles an hour is negligence *per se*, even though conductor told man to jump on. (*Hunter v. Cooperstown & S. V. R. Co.*, 2 L. R. A. [N. Y.], 832.)

The residents of a municipality must be held to know the rule as to the place of stopping of trains of street cars prescribed by the ordinances of the city. (*North Birmingham Street R. Co. v. Calderwood*, 7 So. Rep. [Ala.], 360.)

The ninth instruction was erroneous. The rule is that if the plaintiff was guilty of contributory negligence, or, in other words, guilty of negligence contributing to the injury, then the plaintiff cannot recover. (*Philadelphia & R. R. Co. v. Boyer*, 97 Pa. St., 91; *New Jersey Express Co. v. Nichols*, 33 N. J. Law, 434; *Wilds v. Hudson River R. Co.*, 24 N. Y., 430; *Toledo & W. R. Co. v. Goddard*, 25 Ind., 185; *Baltimore & O. R. Co. v. State*, 60 Md., 449.) In Illinois an exception to this rule exists to the extent and with the limitation that if the plaintiff's negligence is slight and the defendant's negligence in comparison should be gross, then such slight negligence of plaintiff will not prevent recovery. (*Chicago, B. & Q. R. Co. v. Lee*, 60 Ill., 501; *Illinois C. R. Co. v. Hammer*, 85 Ill., 526; *Chicago, B. & Q. R. Co. v. Harwood*, 90 Ill., 425; *Chicago & A. R. Co. v. Langley*, 2 Ill. App., 505; *North Chicago Rolling Mills Co. v. Monka*, 4 Ill. App., 664; *City of Winchester v. Case*, 5 Ill. App., 486; *Pittsburgh, C. & St. L. R. Co.*

*v. Shannon*, 11 Ill. App., 222; *Peoria, D. & E. R. Co. v. Miller*, 11 Ill. App., 375; *Moody v. Peterson*, 11 Ill. App., 180; *Union Railway & T. Co. v. Kallaher*, 12 Ill. App., 400.) The supreme court of Nebraska has decided the question to the effect that if plaintiff's slight negligence, if any, contributed directly to the alleged injury, the verdict should be for the defendant. (*City of Lincoln v. Gillilan*, 18 Neb., 114.)

*Cowin & McHugh, contra:*

We maintain that the following propositions cannot be successfully controverted: (1.) The same degree of care and caution is not required of a person in getting on or off a street railway car as is required in getting on or off a steam railway car. (2.) The plaintiff, Miss Craig, was not guilty of negligence, when she found the car nearly at a dead still, in rising from her seat and putting one foot upon the side board step, ready to step off when the car should completely stop. (3.) If Miss Craig was guilty of negligence in rising from her seat, under the circumstances, and putting one foot upon the side board, ready to step off when the car should cease to move, yet, if the gripman saw her in that position and, instead of entirely stopping the car, propelled it forward, which caused more or less of a jerk, by reason of which she was thrown and injured, she is entitled to recover. (4.) If the conductor and gripman, one or both, knew that a passenger was to alight at Cass street and, in addition to that, the bell was rung for a stop, and that when the car nearly came to a stop, barely moving, Miss Craig arose from her seat, took a step with one foot upon the side board, ready to step with the other immediately after the car should cease moving, and the car suddenly started forward, before entirely stopping and giving her an opportunity to get off, and that such forward movement caused her to be thrown to the ground and injured, then she is entitled to recover, whether the gripman and

conductor, or either, saw her in her standing position or not, for the reason that it was their, or one of their duties to see that the car came to a full stop, and that the passenger had alighted before accelerating the speed of or propelling forward the car. (5.) It is not *prima facie* evidence of negligence to get on or off even a steam passenger train, much less a street car, while the train is moving at a speed of four or five miles an hour. (*Louisville & N. R. Co. v. Crunk*, 21 N. E. Rep. [Ind.], 31; *Birmingham U. R. Co. v. Smith*, 8 So. Rep. [Ala.], 86; *Evansville & C. R. Co. v. Duncan*, 28 Ind., 441; *Jeffersonville, M. & I. R. Co. v. Hendricks*, 41 Ind., 48; *Montgomery & E. R. Co. v. Stewart*, 8 So. Rep. [Ala.], 708; *Union P. R. Co. v. Mertes*, 35 Neb., 204; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S., 551; *New York, P. & N. R. Co. v. Coulbourn*, 16 Atl. Rep. [Md.], 208; *Lacas v. Detroit City R. Co.*, 52 N. W. Rep. [Mich.], 745; *Britton v. Grand Rapids Street R. Co.*, 51 N. W. Rep. [Mich.], 277; *Beems v. Chicago, R. I. & P. R. Co.*, 12 N. W. Rep. [Ia.], 223; *Bowie v. Greenville Street R. Co.*, 10 So. Rep. [Miss.], 574; *Central Railroad & Banking Co. v. Miles*, 6 So. Rep. [Ala.], 696; *Ridenhour v. Kansas City Cable R. Co.*, 13 S. W. Rep. [Mo.], 889; *Houston v. Gate City Street R. Co.*, 15 S. E. Rep. [Ga.], 323; *Gallagher v. West End Street R. Co.*, 30 N. E. Rep. [Mass.], 480; *Buck v. People's Street R. & E. L. & P. Co.*, 18 S. W. Rep. [Mo.], 1090; *Lent v. New York C. & H. R. R. Co.*, 24 N. E. Rep. [N. Y.], 653; *Hays v. Gainesville Street R. Co.*, 8 S. W. Rep. [Tex.], 491; *Strand v. Chicago & W. M. R. Co.*, 31 N. W. Rep. [Mich.], 184.)

The following cases are cited in support of the ninth instruction: *Orleans Village v. Perry*, 24 Neb., 831; *Lake Shore & M. S. R. Co. v. Johnson*, 26 N. E. Rep. [Ill.], 510; *Terre Haute & I. R. Co. v. Voelker*, 22 N. E. Rep. [Ill.], 20.

RAGAN, C.

Miss Margaret Craig brought this suit in the district court of Douglas county against the Omaha Street Railway Company (hereinafter called the "company") to recover damages for a personal injury which she alleges she sustained by reason of the company's negligence while she was a passenger on its cars on September 22, 1889. The defenses of the company were a general denial, and contributory negligence on the part of Miss Craig. There was a finding and judgment for Miss Craig, and the company prosecutes error.

The car on which Miss Craig was a passenger was the last of a train of two cars moved by an endless cable. The rear car was an open or summer car, having seats across the same, and on either side a foot-board upon which passengers stepped on entering or leaving the car. At the end of each seat there were uprights with hand-holds attached. The train was in charge of a conductor and gripman. Miss Craig boarded the train at the intersection of Dodge and Twentieth streets in the city of Omaha, and occupied the rear seat. The train was moving north on said Twentieth street, and Miss Craig was to alight at the intersection of Twentieth and Cass streets and on the north side of the latter. It was the rule or custom of the company to stop its Twentieth street cable cars just on the north side of said Cass street. Miss Craig's evidence of the casualty was substantially as follows:

A. Well, when he came to collect the fare at Davenport street I told him to stop at Cass street; he answered, "Yes, ma'am," and when the car was crossing Cass street I noticed they wasn't going to stop and I rang the bell and sat back in the seat and waited for quite a little while; and finally they slowed up the car and it didn't—and they slowed up the car and it was going very slow, and I looked at the gripman to see if he was going to bring the car to a stand-

still, and he looked back at me—it was moving very slow—and then I took the step to step off.

Q. Where did you take the step? Onto what? This rail?

A. On that side rail; yes, sir.

Q. When you took the step—when you put your foot out and took that step onto the east rail for the purpose of stepping off, what was the motion of that car then?

A. O; you could tell it was just slowly moving. You would think it would stop in a second. Instead, when I went to take my last step, why he let the brake off, and the car started forward with a sudden jerk, and that jerk threw me.

Q. When you arose up to step on the rail, how near had the car stopped?

A. Well, it was just moving along very slowly. It was not—it hadn't come to a standstill—stopped altogether, but it was moving. You would think it would stop at any time, and I waited quite a little after I raised from the seat to give him plenty of time to bring the car to a stop.

Q. When you were on this rail, ready to step off one step, was the gripman looking at you?

A. Yes, sir.

Q. .Did you see him?

A. Yes, sir. He looked around to see, I had an idea, if I got off or was going to get off.

Q. But when you were there, and it was going slow, was he looking at you when you were there on the rail ready to step off?

A. Yes, sir. He turned and looked at me the second, time before I got off.

Q. And then the car jerked ahead?

A. Yes, sir.

Cross-examination:

Q. But the train had not got quite to a full stop when you did step off?

43

A. Well, I had not yet stepped.

Q. So from the seat that you were sitting in, if you wanted to alight from that car, the first thing you would do would be to put your foot out on this foot-board that ran along the side of the car?

A. Well, I didn't do that.

Q. Well, I am not asking you how you did it. Isn't that the first thing you would step onto? Would it be the platform?

A. Well, I would raise out of the seat. I would stand in a straight standing position first, before I would attempt to step down.

Q. Now, why did you not wait till the car had come to a full stop?

A. Why, the car was moving so slow that you would think it would stop every instant, and it was merely moving, and I had stepped down onto the side rail or foot-board, and thought all the time I would step, and I took that step onto the foot-board, thinking that the car would be stopped; and in place of coming to a real standstill, stopping perfectly still, it gave a sudden jerk forward, and that jerk had thrown me off of that foot-board.

Q. Why didn't you wait until the car had come to a full stop before you stepped out on that foot-board?

A. Well, the car was moving so slow and the gripman looked. I noticed the gripman twice to see if he was going to bring it to a stop, and he looked back twice to see if I had got off; and it was moving so slow that I thought it would be stopped all the time, and I would step onto that foot-board; and it didn't; it went on; and if it had moved at the rate it was going then, I could have stepped off in perfect safety; but that sudden jerk threw me.

Q. So you assumed, or thought you could step down with safety off the car, if the car maintained simply the motion it then had?

A. Well, I wasn't going to try it.

Q. Well, but if you had grabbed hold of that [the post] you would not have fallen, would you?

A. Well, I would with the jerk the car had taken.

Q. You think you would anyhow?

A. Yes, sir; it jerked forward very suddenly.

Q. Now, you say after you had got onto that foot-board that the car made a jerk?

A. Yes, sir.

Q. That is the way you think it was?

A. Yes, sir.

Q. When you got onto that foot-board, which way were you looking?

A. Well, I glanced at the gripman just as soon as I took the step down on the foot-board, for I thought every second the car would come to a standstill.

Q. And you didn't know at the time of this accident any more about it than you know?

A. Well, I know that he let the car go forward when he hadn't ought to——

Q. You think that you didn't step from that foot-board onto the ground? Is that correct?

A. That I didn't step?

Q. Yes.

A. Why, no; I didn't. I didn't step. The car jerked forward and threw me before I had time to step.

Q. Then you didn't step from the platform onto the ground?

A. No, sir.

This testimony is contradicted by the witnesses for the company. One Thompson, a passenger on the train, testified that as near as he could see from where he was standing, Miss Craig arose and turned and stepped right out on the foot-board (platform) and after that right out on the street; that at that time the car was not moving much faster than a person could walk and came to a stop within a car's length of the point where Miss Craig stepped off, and that

he did not notice any sudden jerking of the car. One Benton testified that Miss Craig stepped onto the platform and then onto the street before the car stopped, and that there was no sudden jerking of the car. The gripman and conductor testified that there was no sudden jerking of the car. This evidence on the part of the company was somewhat weakened and contradicted by cross-examination and certain facts and circumstances proved on the trial. This evidence tended to establish the following conclusions: That Miss Craig notified the conductor where she was to alight; that as the car was on the Cass street crossing Miss Craig rang the bell for the train to stop; that the gripman applied the brakes and brought the train nearly to a standstill just beyond the crossing; that when the car was nearly stopped Miss Craig stepped out on the platform intending to step to the street when the train should become motionless; that the gripman saw her in that position, and instead of bringing the train to a standstill he took off the brakes, which caused the speed of the train to be accelerated, and that this sudden jerk threw Miss Craig from the platform onto the street; and that she did not step from the platform onto the street.

Counsel for the company says that this evidence discloses no negligence on the part of his client. The negligence charged to the company was releasing the brake and gripping the car to the cable, and thus accelerating the speed of the car, instead of stopping it while Miss Craig, to the knowledge of the company's servants in charge of the train, was standing on the platform, the car having been slowed down, expecting the train to come to a full stop and intending to alight when it should do so. Whether the company's servants were guilty of the negligence charged was a question properly submitted to the jury. We cannot set aside the jury's finding because the evidence on which it was based was contradictory. The credibility of witnesses and weight to be given their state-

ments were for the jury, not for us. This court has many times said that it would not weigh conflicting evidence nor pass judgment on the credibility of witnesses.

At the request of the company the trial court instructed the jury as follows:

"The burden rests upon the plaintiff to prove that there was a sudden starting of the car. Upon this point you have the testimony of five witnesses for the defendant; two of them the train men, and three not employes of the company. If these witnesses had an equal opportunity to know whether there was or was not a sudden jerking of the car, and if entitled to equal credit, then the plaintiff has failed to produce a preponderance of testimony on this point." The giving of such an instruction as this is of doubtful propriety; and it does not follow that because five persons had an equal opportunity to observe an occurrence which one person says happened, and the other five say they did not observe, that therefore the occurrence did not happen. The jury may have been of the opinion that it was more probable that Miss Craig fell from the platform of the car, as she says she did, and that the other witnesses, by reason of their situation at the time, did not notice the accelerated speed of the car, than that Miss Craig deliberately committed perjury. At all events the company has had the benefit of having its theory of the casualty not only submitted to the jury, but had their attention specifically directed by the instruction of the court in such manner as to leave no doubt but that the jury's finding must be taken to mean that Miss Craig's version of the accident was the correct one.

Counsel for the company next contends that because Miss Craig did not wait for the car to come to a full stop before she stepped onto the platform, and because, when she stepped onto the platform, she did not avail herself of the hand-holds on the uprights at the end of the seats, that she was, therefore, guilty of contributory negligence, and

asks us to say as a matter of law that this act and omission of Miss Craig raise against her a conclusive presumption of negligence. But we think that Miss Craig's stepping out onto the platform of the car before it came to a full stop, at the time and under the circumstances, and her failure to avail herself of the hand-holds on the uprights of the seats were, at most, facts to be submitted to the jury as evidence tending to show negligence on her part. Reasonable men might honestly draw different conclusions as to whether this act and omission of Miss Craig were, under the circumstances, negligence, and therefore it was for the jury to say whether the evidence of what she did and what she omitted to do warranted the conclusion of negligence on her part. It is for the court to say what act or omission is evidence of negligence, but it is for the jury to say whether the evidence establishes negligence. This is the settled rule and doctrine of this court, and has been many times announced, as will be seen from the following cases: *Huff v. Ames,* 16 Neb., 139; *Johnson v. Missouri P. R. Co.,* 18 Neb., 690; *City of Lincoln v. Gillilan,* 18 Neb., 114; *City of Plattsmouth v. Mitchell,* 20 Neb., 228; *Powers v. Craig,* 22 Neb., 621; *Orleans Village v. Perry,* 24 Neb., 831; *Union P. R. Co. v. Lee Sue,* 25 Neb., 772; *Stevens v. Howe,* 28 Neb., 547; *Omaha & R. V. R. Co. v. Clark,* 35 Neb., 867; *Chicago, B. & Q. R. Co. Landauer,* 36 Neb., 642; *Omaha & R. V. R. Co. v. Brady,* 39 Neb., 27; *Missouri P. R. Co. v. Baier,* 37 Neb., 235; *American Water-Works Co. v. Dougherty,* 37 Neb., 373; *Union P. R. Co. v. Porter,* 38 Neb., 226.) The rule is, we think, just and reasonable, and in harmony with the genius of our institutions and the weight of modern judicial authority. (*Louisville & N. R. Co. v. Crunk,* 21 N. E. Rep. [Ind.], 31; *New York, P. & N. R. Co. v. Coulbourn,* 16 Atl. Rep. [Md.], 208; *Cumberland Valley R. Co. v. Maugans,* 61 Md., 53; *Britton v. Street R. Co., Grand Rapids,* 51 N. W. Rep. [Mich.], 276; *Lacas v. Detroit*

*City R.*, 52 N. W. Rep. [Mich.], 745; *Strand v. Chicago & W. M. R. Co.*, 31 N. W. Rep. [Mich.], 184; *Beems v. Chicago, R. I. & P. R. Co.*, 58 Ia., 150; *Bowie v. Greenville Street R. Co.*, 10 So. Rep. [Miss.], 574; *Ridenhour v. Kansas City Cable R. Co.*, 13 S. W. Rep. [Mo.], 889; *Buck v. People's Street R.*, 8 S. W. Rep. [Mo.], 1090; *Lent v. New York C. & H. R. R. Co.*, 24 N. E. Rep. [N. Y.], 653; *Central Passenger R. Co. v. Stevens*, 22 S. W. Rep. [Ky.], 312; *Connolly v. City of Waltham*, 31 N. E. Rep. [Mass.], 302; *Finnegan v. Fall River Gas Works Co.*, 34 N. E. Rep. [Mass.], 523; *Washington & G. R. Co. v. Harmon*, 147 U. S., 571; *Hobbol v. Chicago Sugar Refining Co.*, 44 Ill. App., 418; *Arkansas Telephone Co. v. Ratteree*, 21 S. W. Rep. [Ark.], 1050; *Brown v. Brooks*, 55 N. W. Rep. [Wis.], 395; *Thompson v. Flint & P. M. R. Co.* 57 Mich.; 300; *Gaynor v. Old Colony & N. R. Co.*, 100 Mass., 208; *Marietta & C. R. Co. v. Picksley*, 24 O. St., 654; *Jamison v. San Jose & St. C. R. Co.*, 55 Cal., 593.) This rule has received the sanction of the supreme court of the United States. The *Grand Trunk R. Co. v. Ives*, 144 U. S., 408, was a suit brought by the administrator of one Smith for damages for his death alleged to have been caused by the negligence of the railway company. Smith was traveling on the highway which crossed the Grand Trunk Railway Company's road at grade. At the place of the crossing a view of the track was obstructed until a person approaching the same was within fifteen or twenty feet of it. Smith and his wife were driving down the highway in a buggy with the top raised, and just as they reached the point where the railway crossed the highway they were struck by an engine and Smith was killed. It appears that the defense relied upon was that Smith was guilty of contributory negligence, in that he drove onto this railway track, the view of which was obstructed, without stopping and first ascertaining if there was a train approaching. The circuit court of the United States for the district of

Michigan instructed the jury as follows: "You fix the
standard for reasonable, prudent, and cautious men under
the circumstances of the case as you find them, according to
your judgment and experience of what that class of men
do under these circumstances, and then test the conduct
involved and try it by that standard, and neither the
judge who tries the case nor any other person can supply
you with the criterion of judgment by any opinion he may
have on that subject." This instruction was excepted to,
and on appeal to the United States supreme court it
was declared to be correct law and applicable to the facts
brought out at the trial of the case. The court said: "Neg-
ligence is the failure to do what reasonable and prudent
persons would ordinarily have done under the circum-
stances of the situation; or, doing what reasonable and
prudent persons under the existing circumstances would
not have done." The court further say in this connection:
"There is no fixed standard in the law by which a court is
enabled to arbitrarily say in every case what conduct shall
be considered reasonable and prudent, and what shall con-
stitute ordinary care under any and all circumstances. *  *
What may be deemed ordinary care in one case may, un-
der different surroundings and circumstances, be gross neg-
ligence. The policy of the law has relegated the determi-
nation of such questions to the jury under proper instruc-
tions from the court. It is their province to know the
special circumstances and surroundings of each particular
case and then say whether the conduct of the parties in that
case was such as would be expected of reasonable, prudent
men under a similar state of affairs." And the court de-
clared the rule to be: "When a given state of facts is such
that reasonable men may fairly differ upon the question as
to whether there was negligence or not, the determination
of the matter is for the jury. It is only where the facts
are such that all reasonable men must draw the same con-
clusion from them that the question of negligence is ever

considered as one of law for the court." This rule has been
again examined and approved by the supreme court of the
United States as late as November, 1893, in the case of
*Gardner v. Michigan Central R. Co.*, 150 U. S., 349.

Counsel for the company cites us to authorities holding
that as a matter of law it is negligence for one to step on
or off a street car in motion. Such are *Hagan v. Phila-
delphia & G. F. R. Co.*, 15 Phila. [Pa.], 278; *Harmon v.
Washington & G. R. Co.*, 6 Mackey [D. C.], 64; *Stager
v. Ridge A. P. R. Co.*, 119 Pa. St., 70; *Reddington v. Phil-
adelphia Traction Co.*, 132 Pa. St., 154. The cases cited
hold as counsel contends, but it must suffice to say that they
do not hold the rule of this court.

The next error alleged by the company is the giving
by the trial court to the jury instructions Nos. 6 and 9.
They are as follows:

"No. 6. The plaintiff, in order to recover in this action,
must not only satisfy you by the evidence that she received
the injuries complained of, but that the same were occa-
sioned by the negligent act of the defendant, or its agents,
on the occasion set forth in the petition. Negligence has
been defined to be 'the omission to do something which a
reasonable man, guided by those considerations which or-
dinarily regulate the conduct of human affairs, would do,
or doing something which a prudent and reasonable man
would not do;' it is 'want of due diligence, whether the
party at fault is an individual, a private corporation, or a
municipality.'

"No. 9. You are instructed that if you find from the
evidence that plaintiff, at the time of the injury com-
plained of, was guilty of slight negligence in attempting to
leave the car while in motion, at the speed above mentioned,
and that such slight negligence contributed to the injury,
still such fact, if you find it to be a fact, would not of
itself prevent a recovery in this action, and the plaintiff is
barred from recovering damages only when the injury

could have been avoided by the exercise of ordinary or reasonable care upon her part. Such negligence on the part of the plaintiff, if you find any to have existed, must be found to have contributed to bring about the injury complained of in order to defeat a recovery in this case."

The complaint made of the sixth instruction is that it omits the element of contributory negligence on the part of the plaintiff; and that the ninth instruction is bad because it asserts that if the jury should find Miss Craig was guilty of slight negligence contributing to her injury it would not prevent her recovery; but we do not think that the company was prejudiced by the giving of either of these instructions. The court had just told the jury in the eighth instruction that if they should find from the evidence that Miss Craig attempted to step from the train while the same was in motion, and that such act was a dangerous one and one liable to result in injury, and that she was heedless, careless, and negligent in stepping from the train, and that her injuries were occasioned by such act and not by the negligence of the company, then she could not recover; and that if the jury found Miss Craig had been guilty of contributory negligence, it would bar her right to recover, unless they found that the company had been grossly and wilfully negligent. In drafting the ninth instruction the learned judge probably had in mind certain instructions given by the trial court and commented on by this court in *City of Lincoln v. Gillilan*, 18 Neb., 114, and *Orleans Village v. Perry*, 24 Neb., 831, where such terms as "slight negligence" and "slight want of ordinary care" were used. It is unfortunate that such expressions have ever been used in instructions to juries, as they tend to obscure and confuse what should be stated in plain and concise language. Negligence does not cease to be negligence because qualified as "slight," nor because denominated "slight want of ordinary care." While instruction No. 9 was erroneous as above stated, we are constrained to say that when all the

instructions of the court are considered together, the company was not prejudiced by the error in said instruction.

The next complaint of the company is that the court erred in giving instruction No. 12 on its own motion, and instruction No. 1 at the request of Miss Craig. The instructions are as follows:

"12. If you find from the evidence that before the injuries complained of were received, plaintiff notified the conductor of the train that she desired to leave the same at Cass street, that the conductor notified the gripman of this fact, and you find that while crossing Cass street, the defendant let go the cable and put on the wheel brake, and slowed down so that after arriving on the straight track, north of the north line of Cass street, said train was then moving at a rate of from two to three miles per hour; and if you find from the evidence that plaintiff then arose and stepped on the platform as if to descend from the car, that the gripman turned once or twice to observe her; and if you further find that about this time, or before plaintiff left her position, the gripman suddenly let off the brake and permitted the car to start with a sudden jerk, by reason whereof plaintiff was violently thrown to the ground and received the injuries complained of; and if you find that at the time the plaintiff arose to get off the car she had reasonable ground to believe that the car was about to stop, and that her position did not contribute to her fall and injuries, that the defendant would be liable to plaintiff in such sum as the evidence shows you she sustained, not exceeding the amount claimed in the petition, unless you further find from the evidence that plaintiff could not by the exercise of due care have avoided the consequence of the negligent act of the defendant, if you find it was so negligent, and if you find such to be the facts."

"1. If you, gentlemen of the jury, find from the testimony in this case that the plaintiff Margaret Craig was a passenger on the defendant's cars at the time alleged in the

petition, that the servants of the company in charge of those cars knew at what point she desired to alight, she was entitled to be carried by the defendant company with proper and reasonable care to the place where she desired to alight, and to have the cars stop at that point a sufficient length of time to permit her to alight with reasonable care and diligence; and if you further find from the testimony that when the defendant's cars reached that point they had commenced slowing up but did not stop, but passed beyond such point and then continued to slow up, and while going very slow, as if to immediately stop, the plaintiff, Miss Craig, arose from her seat and stepped upon the platform or guard on the side of the car, which platform or guard was used for alighting from the car, and that as she stepped on that platform or guard for the purpose of alighting when the car should stop, the gripman propelling the car saw her and moved the cars suddenly forward with a jerk before stopping them and giving Miss Craig, the plaintiff, an opportunity to alight, and that by such sudden movement forward she was thrown to the ground and injured, and that she herself was free from blame under all the circumstances of the case, then your verdict should be in favor of the plaintiff."

The complaint made of these instructions is that they fail to state what would have constituted contributory negligence on Miss Craig's part; but we are of the opinion that the instructions were correct in every particular. As has been stated above, it was not for the court to say what acts or omissions of Miss Craig rendered her guilty of contributory negligence. That was for the jury. Another error assigned by the company is the refusal of the trial court to give instructions Nos. 9, 12, and 16, requested by the company. They are as follows:

"16. The jury are instructed that, under the evidence of this case, there is not sufficient proof of any act on the part of the defendant company, or its agents or servants, to jus-

tify a recovery herein, and you are instructed to return a verdict for the defendant."

"9. The jury are instructed that it is presumably a negligent act for a passenger to attempt to alight from a cable train while the same is in motion and that it is not sufficient, to rebut this presumption of negligence on the part of the plaintiff, that the men in charge of the car violated their duty in not stopping at the exact place where the train had been accustomed to stop."

"12. The jury are further instructed that if they find that the plaintiff, after ringing the bell to stop the car, attempted to alight from the car before the train came to a full stop, but while its speed was being slackened, that she was guilty of contributory negligence, and that such facts do not make out a case which should entitle the plaintiff to recover."

We think the court was right in not giving these instructions. By them it was sought to have the trial court say what act or omission of Miss Craig was or was not negligence.

Again, a review of the entire record and of all the instructions given to the jury in this case convinces us that the plaintiff in error has no just ground to complain because the jury was not properly instructed, or sufficiently instructed.

At the request of the company the trial court charged the jury as follows:

"1. The jury are instructed that if the plaintiff attempted to get off from a moving cable car while the speed of the train was being slackened, but before the train had been brought to a full stop, she was guilty of contributory negligence, which bars her right of recovery if this be true, although the men in charge of the train did not immediately comply with her request to stop the train.

"2. The jury are further instructed that if the plaintiff signaled the car to stop and the car immediately began to

slacken speed, and the plaintiff, without waiting for the car to stop, did step from the car while it was in motion, and was thereby injured, she cannot recover.

"3. The jury are further instructed that if the gripman in charge of the car had applied the brakes, and was bringing the train to a stop for the purpose of allowing the plaintiff to alight from the car, and the gripman, by applying the brakes and slackening the speed of the train for the purpose of stopping the train, was doing his duty, and that the only duty which the men in charge of the train owed to the plaintiff was to stop the train as soon as the same could be reasonably done, and if the men in charge of the train performed their duty in this respect, and were not guilty of any other wrongful or negligent act in connection with the stopping of the train, the plaintiff cannot recover, and your verdict should be for the defendant.

"4. The jury are further instructed that if you find from the evidence that the plaintiff, without waiting for the men in charge to bring the same to a stop, attempted to get off of the train while the same was in motion, and that injury resulted to her by reason of her own act in attempting to get off of the train while the same was in motion, and while the same was being brought to a stop, then the plaintiff cannot recover.

"5. The jury are further instructed that if they believe from the evidence that the plaintiff, in attempting to step off from the car while still in motion, stepped directly out from the car at right angles from the car, and that by reason of the momentum of the car, and her own body, she was caused to fall over northwards, the direction in which the car was moving, she was guilty of contributory negligence and cannot recover.

"6. The jury are further instructed that any failure of the defendant company, if such there was, to stop at the exact point where the company is accustomed to stop its cars, is not of itself negligence on the part of the company.

"7. The jury are further instructed that if they believe from the evidence that the plaintiff thought she could step from the car with safety to herself, even while the car was in motion, the fact that she so believed she could step from the car is not of itself proof that she was not guilty of contributory negligence.

"8. The jury are further instructed that the plaintiff assumed the responsibility of danger in attempting to step from the car while in motion, and if they find from the evidence that she did so, the fact that she misjudged her ability to get from the car with safety, if she did so misjudge her ability to alight with safety, does not show negligence on the part of the defendant company, and does not create any liability on the part of the defendant company.

"10. The jury are further instructed that if the plaintiff was injured by the accident caused by her attempting to jump off of a moving cable car, the defendant company is not liable unless the proof satisfies them that some negligent act on the part of the company's servants in charge of the train produced the injury shown by the evidence.

"11. The jury are instructed that if they believe from the evidence that there was a sudden movement of the car at the instant of time when the plaintiff was attempting to get off from the car, that such fact does not show negligence on the part of the railway company; for in order to show negligence on the part of the railway company, there must be some evidence of a sudden movement of the car attributable to some act or action of the men in charge of the train; and that such act of negligence on the part of the men in charge of the train cannot be determined by the jury from mere conjecture.

"13. The jury are further instructed that if the plaintiff believed that the train was about to pass the place of her destination without stopping, that such fact did not justify her in attempting to get off of the car while it was still in motion.

"14. The jury are further instructed that under no circumstances can the plaintiff recover unless the defendant, by its agents and servants in charge of the train, did some act or was guilty of some negligence which contributed to the injury.

"15. If the jury should be satisfied from the evidence that when the plaintiff signaled the car to stop by the ringing of the bell for that purpose, the car immediately began to slacken its speed, and that the plaintiff, without waiting for the car to stop, undertook to and did step from the car while it was still in motion, and was thereby injured, she cannot recover, and the defendant is entitled to the verdict."

Some of these instructions should not have been given. The first, second, fifth, seventh, and fifteenth, in effect, told the jury that if Miss Craig stepped from the car while in motion, she was guilty of contributory negligence. The sixth instruction told the jury that it was not negligence in the company not to stop its car at the point where the company was accustomed to stop its cars. It was not for the court to say; it was for the jury. By the eleventh instruction the court told the jury that if the company started its car with a sudden jerk at the instant when Miss Craig was attempting to step from the platform onto the street, that such act on its part was not negligence, and the instruction further proceeds to tell the jury why it was not negligence.

The final error assigned here is that the trial court erred in sustaining a challenge for cause submitted to one Woodworth, called as a juror. This man's examination was as follows:

Q. Mr. Woodworth, you have no bias or prejudice against the plaintiff in this suit?

A. I do not know the party at all.

Q. You have no bias or prejudice either for or against the street railway company?

A. No, sir.

Omaha Street R. Co. v. Craig.

Q. You know nothing about the facts in this case?

A. I do not think I ever heard of it until I heard Mr. Cowin state it. I may have read a notice of it in the papers; that is all.

Q. Then could you, or could you not, in your opinion, render a fair and impartial verdict, according to the law and the evidence, as you shall be instructed by this court.

A. Yes, sir.

Q. And your acquaintance with the officers of the railway company would not prevent you from rendering a fair and impartial verdict on the evidence as you shall be instructed by the court?

A. That would not interfere with my duties as a juror at all. The point I made, you know, was that other things being equal, then I would be more especially in favor of the street railway company, simply because of my acquaintance with them.

Q. You did not mean to say that would have any greater weight in this case where you happened to be acquainted with one of the parties to the lawsuit?

A. O, no. No sir.

Cross-examination:

Q. As I understood you before when I asked you the question whether your acquaintance with the stockholders and officers of the street railway company would interfere with your judgment or finding in the case, you stated, that other things being equal, you thought it would?

A. Yes, sir.

Q. That is right?

A. Yes, sir.

We think that a juror should not only be unbiased and unprejudiced against both the parties to a suit, but that he should be indifferent as to which party succeeds; and that a juror who admits that an acquaintance with a party litigant would interfere with his judgment or finding in the case, is an incompetent juror; and that the court did not

44

abuse its discretion in sustaining a challenge submitted to
Mr. Woodworth for cause.

The judgment of the district court is

AFFIRMED.