IN RE ESTATE OF JOHN POTTS.
TRUST COMPANY OF CHICAGO, ADMINISTRATOR, APPELLANT, V. RAY POTTS, ADMINISTRATOR, APPELLEE.
14 N. W. 2d 323
FILED MAY 5, 1944. No. 31768.

*Frederick M. Deutsch* and *Alexander J. Reiff*, for appellant.

*R. J. Shurtleff* and *Elmer Rakow*, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an action against the estate of John Potts, deceased, by the Trust Company of Chicago as administrator of the Estate of Marlene Harvey, deceased, for her wrongful death. The jury returned a verdict for the objector and the claimant appeals.

The evidence in this case shows that on June 23, 1941, at approximately 5:20 p. m., a Buick automobile driven by

Florence Luckey was proceeding west on Highway No. 20 and as it arrived at a point about six miles east of Bassett it collided with a Ford automobile driven by John Potts. The occupants of the Buick car were four women, a boy ten years of age and a baby, Marlene Harvey, eleven months of age. All lost their lives in the accident except one of the women and the ten-year-old boy. The occupants of the Ford car consisted of John Potts, the driver, who was killed in the accident, Zane Wood, a hitchhiker, who suffered a broken leg, and Donald Potts, the nine-year-old nephew of John Potts, who escaped serious injury. The action was brought by the administrator of the estate of the eleven-months-old child, Marlene Harvey, to recover damages for her wrongful death alleged to have been caused by the negligence of John Potts, the driver of the Ford car.

The evidence generally shows that as the cars approached each other the left front tire of the Buick automobile blew out. The driver was unable to hold the Buick car on its course and it gradually encroached upon the south half of the highway. There is evidence that the Buick was wholly on the south side of the highway immediately prior to the accident, although its right front wheel was north of the center line of the highway after the accident.

Zane Wood, an occupant of the rear seat of the Ford car, testified that the Ford was traveling at 55 miles an hour and that it did not slow down prior to the accident. He observed the deflated tire on the Buick when the Ford was one and one-half blocks away. He observed the Buick gradually coming over onto the south side of the highway and when the cars were a half block apart he dropped to the floor of the Ford car, taking the Potts boy with him. He did not see the cars come together, nor the situation existing immediately prior to the accident.

Mrs. Nellie Blekfeld, an occupant of the Buick car, testified that the Buick was traveling at 35 miles an hour when the tire blew out, that the car gradually moved over the center line to its left, that the driver regained control and turned the car back toward its proper side of the highway

when the Ford car suddenly turned to its left and crashed head on into the Buick car. Her testimony is that the Buick was traveling at 10 miles an hour when the collision occurred.

The only other eyewitness who was able to give an account of the accident was one John Shald, a farm and ranch operator who lived near Stuart. He was traveling east on Highway No. 20 at a point about three-quarters of a mile west of the place where the accident happened, when he was passed by the Ford car. He was then driving at 50 miles an hour. His opinion was that the Ford was traveling 65 to 70 miles an hour at that time. He also testified that the Buick car was approaching at about the same rate of speed. He observed the Buick when the tire blew out, saw it move over gradually onto the south side of the highway, and states that the Buick was at least two-thirds on its left-hand side of the white line when the accident occurred.

A state highway patrolman testified to conditions existing at and near the scene of the accident. His testimony is that the road had an oil mat surface, was 32½ feet wide, with the usual white stripe in the center. The rim mark made by the left front wheel of the Buick after the blowout was plainly visible. From the point of beginning to the point where it crossed the center line the distance was 204 feet. From the point where it crossed the center line to the point of the collision it was 180 feet. After the accident it was seven feet two inches from the southerly most part of the Buick to the south edge of the oil mat. The shoulder was four feet three inches wide at that point. It was upon this evidence, substantially as here recited, that the jury returned a verdict for the objector.

The only question involved in the present case is whether John Potts was guilty of any negligence proximately contributing to the accident. No question of contributory negligence was involved. The case was clearly one for the jury. Consequently, the only question remaining is whether the trial court committed any error prejudicial to the rights of the claimant in the course of the trial.

Claimant contends that the trial court erred in refusing to give his requested instruction No. 9 and in giving instruction No. 16 on the court's own motion. The instruction given, as well as the one requested, purports to set forth the measure of the claimant's damage in the event the jury found that the objector was liable for the death of Marlene Harvey. In view of the finding of the jury that John Potts was free from actionable negligence, any error in the instructions relating to the measure of damages is necessarily harmless. *Potach v. Hrauda,* 132 Neb. 288, 271 N. W. 795.

Claimant complains of the ruling of the trial court in permitting the witness Shald to testify on cross-examination to the speed of the Buick car. The record shows that claimant interrogated the witness about his knowledge of the accident, but did not ask him concerning the speed of the Buick car. He had testified on direct examination to the speed of the Ford car. Whether the speed of the Buick car was so closely related to the testimony of the witness on direct examination as to permit of cross-examination is a question on which reasonable minds might differ. For this reason a trial judge has a wide discretion in fixing the limits of cross-examination and the court's ruling with reference thereto will not ordinarily be disturbed unless it results in prejudice to the rights of the complaining party. *Peterson v. State,* 63 Neb. 251, 88 N. W. 549; *Goemann v. State,* 100 Neb. 772, 161 N. W. 421. Ordinarily a party may properly cross-examine a witness only as to such matters as were touched upon in the direct examination. If a party desires to examine a witness on matters not touched upon in the direct examination, he should make the witness his own. But the cross-examination of a witness should be and is something more than a mere recapitulation of the witness' testimony on direct examination. We think the trial court might well have limited the cross-examination of this witness more than was done in compliance with the foregoing rule, but we cannot say that the wide latitude allowed a trial judge in such matters was abused to the preju-

dice of the claimant. The interrogation of the witness with relation to the Buick car was in connection with the manner of its operation. It seems to us that if all matters with reference to its operation except its speed were touched upon in the direct examination, it cannot be said that an inquiry as to the speed of the car was such a different subject as to be outside the scope of the discretion reposed in a trial judge in determining the limits of cross-examination. In *Zelenka v. Union Stock Yards Co.*, 82 Neb. 511, 118 N. W. 103, we said: "Any question concerning the matter which is the subject of the direct examination may be inquired into. In this case the witness had sought to give a history of the circumstances of this accident as observed by him, and the fact that he failed to mention some of them on the direct examination does not preclude the right to bring out such circumstances on cross-examination."

Claimant contends also that the witness Shald was incompetent to testify to the speed of the Buick car for the reason that he had no reasonable time, distance or opportunity to formulate a basis for an opinion as to its rate of speed. The evidence shows that the witness observed the Buick approaching before the tire blew out. Consequently, he had an opportunity to observe it for more than 500 feet at least. It is true that the Buick was coming almost directly toward him and that the Potts car partially blocked his view for a part of that distance, but that is a matter affecting the weight rather than the competency of his evidence. *Brooks v. Thayer County*, 126 Neb. 610, 254 N. W. 413. We conclude, therefore, that the witness was properly qualified to give his opinion as to the speed of the car. The objections of the claimant are proper ones to argue to the jury as affecting the weight of the evidence and the credibility of the witness, but they do not affect the competency of the evidence. *Lewis v. Miller*, 119 Neb. 765, 230 N. W. 769; *Patterson v. Kerr*, 127 Neb. 73, 254 N. W. 704.

Complaint is also made to the overruling of an objection to the following question on the ground that it called for a conclusion on the part of the witness: "But at all times you

saw the Buick car, it was moving and moving fast from east to west, was it not?" The witness answered in the affirmative. Another similar question duly objected to was: "In other words, they hit fast and hard?" The answer: "That is right." The objections to these questions should have been sustained as calling for the conclusion of the witness. Such evidence has no probative force, and standing alone would be insufficient to establish excessive speed. Other evidence was in the record to the effect that the Buick car was traveling 65 to 70 miles an hour. The overruling of the objections under such circumstances does not constitute reversible error. See *Baldwin v. Omaha & C. B. Street Ry. Co.*, 105 Neb. 614, 181 N. W. 525.

The evidence in the case was conflicting. The instructions of the court on the issue of negligence were correct. The jury determined the facts in favor of the defendant. We are unable to say that the verdict was clearly wrong within the rule announced by this court. No error prejudicial to the rights of the claimant appearing in the record, the judgment of the trial court must be affirmed.

AFFIRMED.