MELVIN C. FICKE, APPELLEE, v. RAY G. GIBSON, DOING BUSINESS AS KEARNEY ROOFING COMPANY, ET AL., APPELLANTS.

45 N. W. 2d 436

Filed December 27, 1950. No. 32845.

*William F. Manasil,* and *Davis, Stubbs & Healey,* for appellants.

*McKillip, Barth & Blevens,* and *Guy A. Laverty,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Melvin C. Ficke brought this action in the district court for Garfield County against Ray G. Gibson, doing business as Kearney Roofing Company, and Sam Staten. The purpose of the action is to recover damages resulting from personal injuries suffered by plaintiff when struck by a truck owned by defendant Ray G. Gibson. Plaintiff recovered a verdict. Defendants thereupon filed

a motion for new trial and have appealed from the overruling thereof.

The accident in which appellee was injured happened on November 26, 1948, between 3:30 and 4:00 p. m. on State Highway No. 11 about three miles south of Burwell, Nebraska. At the point of the accident State Highway No. 11 runs a little northwest to southeast but generally north and south. At the time appellee was returning to his home from Burwell. He was riding with a neighbor. His neighbor stopped his truck and let appellee get out. Appellee got out on the west side of the oil-mat. The highway at this point is surfaced with oil-mat or black-top some 26 feet in width. After getting out appellee proceeded to cross this black-top to get to his home, which is located at this point just east of the highway. While proceeding to cross he was struck by a truck.

The truck which struck appellee was owned by appellant Ray G. Gibson and was at the time being driven by appellant Sam Staten. Staten was an employee of Gibson and at the time was proceeding to Burwell to fix a roof, that being the business in which Gibson was engaged.

Without setting out the evidence in further detail it will suffice here to say that it is sufficient to raise issues for the jury as to whether appellant Staten was guilty of negligence in operating the truck which was the proximate cause of the accident and also whether appellee was guilty of contributory negligence such as might defeat his right to recover.

Appellants complain of the court's admitting evidence of foot and tire marks observed at the scene of the accident some 15 or 16 hours after the accident happened when there was no showing that the conditions had not been changed since the accident. They also complain of these witnesses being permitted to give their opinions, in the form of conclusions, as to the meaning thereof.

The accident happened about 3:30 or 4:00 p. m. on November 26, 1948. LeRoy C. Ficke and C. D. Ficke, brother and father respectively of appellee, testified they examined the scene thereof the next morning between 7:30 and 8:00 a. m. They were then permitted to testify as to the marks, both foot and tire, which they observed there and to state, in the form of a conclusion, that they were the marks made by the respective parties and how the accident happened. There was no affirmative showing that the conditions at the scene of the accident had not changed by the time it was visited by these two witnesses the next morning.

As stated in 9 Blashfield's Cyclopedia of Automobile Law and Practice, § 6179, p. 609: "Evidence as to conditions at the place of a traffic accident an appreciable time thereafter, such as the existence and location of marks or tracks, is admissible upon a proper showing that the conditions have not been changed in the meantime. * * * A different rule applies, however, where there is no showing that the conditions have not been changed since the accident."

The foregoing text goes on to state: "While it is a matter of discretion with the court whether the length of time after the accident is sufficient to bar such testimony, ordinarily the fact that testimony as to conditions relates to a time somewhat remote from the accident affects its weight rather than its competency."

In this respect we said in Potach v. Hrauda, 132 Neb. 288, 271 N. W. 795: "Plaintiff contends that the court unduly restricted him in his attempt to produce evidence of the location of oil spots and glass in and about the scene of the accident. The witnesses produced did not arrive at the scene of the accident until almost three hours after it occurred. There is evidence in the record that there was much traffic over the highway and that the glass had been kicked and swept off the pavement to prevent damage to tires. We find no prejudicial error in the ruling of the trial court, under the circum-

stances of this case, that the evidence tendered was too remote."

As stated in Billingsley v. Gulick, 252 Mich. 235, 233 N. W. 225: "A witness visited the scene early the next morning, and, over objection, was permitted to testify that there was a pool of blood on the gravel at the side of the pavement, also a deep impression in the gravel for about 30 feet from the south to the pool of blood, that a metal cap of an oil bottle was about 3 feet from the pavement and south of the pool of blood, and a shoe and a side windshield from a roadster were over in a dooryard.

"The accident happened between 11 and 12 o'clock at night, and upon a much-traveled road, and the court was in error in receiving the testimony of the finding and location of articles, without affirmative proof that there had been no change of position after the accident."

As stated in 5 Am. Jur., Automobiles, § 633, p. 852: "Evidence as to tracks or other marks made by motor vehicles on the pavement or roadway is generally admissible in civil actions for injury or damage, where the witness testifying had an opportunity to make an observation of the marks before any change had taken place. A proper foundation for the introduction of such evidence should first be laid, however, by showing how soon after the accident the witness observed the markings, his opportunities for accurate observation, and any other factors explanatory of the skid marks or tracks, and the conditions under which they were made."

There is no direct proof in the record that the conditions at the scene of the accident, with reference to the foot marks and tire tracks or skid marks, were the same the next morning as they had been the previous afternoon immediately after the accident. Therefore it was error to admit the evidence relating thereto as of the next morning. Whether, considering all of the facts and circumstances disclosed by the record, it was

prejudicial we need not decide because other errors complained of require a reversal and retrial.

In regard to the second part of the claimed error appellee's witnesses did not only testify that the foot marks or tracks were those of appellee and the tire marks or skid marks were those of appellant Gibson's truck but referred to them as such in testifying and, by their location, described how and where the accident happened.

As stated in Chicago, R. I. & P. Ry. Co. v. Holmes, 68 Neb. 826, 94 N. W. 1007: "He should have been required to state the facts from which his opinion was derived, so long as it was practicable to place those facts before the jury, and to state what would be a prudent and careful course in doing what Oakleaf had to do. The jurors would then have been left to form their own opinion from such facts and from the evidence as to what would be a proper way of doing the work. It is contended on behalf of the plaintiff that the error was not prejudicial, because the conclusion was one which the jurors must have drawn necessarily from the facts if the witness had not given his opinion. We can not agree."

As stated in In re Estate of Potts, 144 Neb. 729, 14 N. W. 2d 323: "The objections to these questions should have been sustained as calling for the conclusion of the witness."

We said in In re Estate of Potts, *supra*: "While objections to conclusions of fact should ordinarily be sustained by the trial court, yet where there is other competent evidence on the subject in the record, their improper admission will not be considered as reversible error where prejudice is not shown."

Here appellant Staten testified that when he first saw appellee he was across the center of the black-top; that he then turned to the left to pass appellee to his (appellee's) rear; that appellee then looked up for the first time and saw the truck; and that appellee then suddenly jumped back and into the path thereof and

was hit. Appellee testified that he had only started to cross the black-top when he looked to his right and saw the truck; that he then waited for the truck to pass; that he was then only two steps or about five feet from the west edge of the black-top; that suddenly the truck swerved toward him; that he "froze" in his tracks; and that the truck then hit him causing his injuries. The evidence of the two witnesses fully corroborates the appellee in his version of the story.

As to which of these parties was telling the truth as to how the accident happened is material to the jury's determination of their respective rights. Under this situation we think the form in which this testimony was given prevented appellants from having this question fairly submitted and decided; consequently it was prejudicial.

Appellants contend that the court, by its instruction No. 4, did not properly inform the jury of the legal effect of the failure of a pedestrian to look for approaching vehicles before and while crossing a public highway.

The court gave instruction No. 4 in this regard which is as follows:

"You are instructed that on the 26th day of November, 1948, it was the law of the State of Nebraska that the driver of a motor vehicle shall at all times cause such vehicle to travel on the right half of the highway, unless such right half is obscured or impassable.

"You are instructed that on said date it was the law of the State of Nebraska that no person should operate a motor vehicle upon a public highway in such a manner as to endanger the life or limb of any person lawfully upon such highway.

"You are further instructed that a pedestrian has an equal right to the use of a highway with that of a driver of a motor vehicle and he is entitled to assume that the driver of a motor vehicle will obey the traffic laws; it is, however, the duty of such pedestrian before

crossing a public highway to exercise due care for his own safety, and to look for approaching vehicles before attempting to cross such highway, and to see that which was in plain sight, unless some reasonable excuse for not seeing is shown.

"If you find from a preponderance of the evidence introduced upon the trial of this case that these rules, or any of them, were violated by either the plaintiff or the defendant, Sam Staten, such violation would not in and of itself constitute negligence, but would be a circumstance which you may take into consideration in determining whether or not the party who violated such rule or rules was guilty of negligence."

No fault is found with this instruction as paragraph four relates to paragraphs one and two, and properly so, for this court has often said: "* * * violations of ordinances and traffic regulations constitute evidence of negligence only, which the jury may properly consider in determining a question of negligence and the degree thereof. Violations of such are not negligence per se. Huston v. Robinson, 144 Neb. 553, 13 N. W. 2d 885; Gleason v. Baack, 137 Neb. 272, 289 N. W. 349." Watson Bros. Transp. Co. v. Chicago, St. P., M. & O. Ry. Co., 147 Neb. 880, 25 N. W. 2d 396.

We have also applied this principle to the violation of common law duties. As stated in Chicago, B. & Q. R. R. Co. v. Metcalf, 44 Neb. 848, 63 N. W. 51, 28 L. R. A. 824: "We cannot see that any distinction in kind arises between a case where the defendant has violated a statutory obligation and one where he has violated the common law obligation to conduct himself for the safety of others in such a manner as one of ordinary prudence would conduct himself under similar circumstances." See, also, Omaha & R. V. Ry. Co. v. Brady, 39 Neb. 27, 57 N. W. 767.

As stated in A. & N. R. R. Co. v. Bailey, 11 Neb. 332, 9 N. W. 50, from Detroit & Milwaukee R. R. Co. v. Van Steinburg, 17 Mich. 99: " '* * * When the question

arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of those conclusions has been drawn by the jury. * * *' "

As quoted from Railroad Co. v. Stout, 17 Wall. 657, we approved in City of Lincoln v. Gillilan, 18 Neb. 114, 24 N. W. 444, the following: " 'Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. * * *' " See, also, Omaha Street Ry. Co. v. Craig, 39 Neb. 601, 58 N. W. 209; Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182.

However, as to the duty set out in paragraph three of instruction No. 4, namely, "* * * it is, however, the duty of such pedestrian before crossing a public highway to exercise due care for his own safety, and to look for approaching vehicles before attempting to cross such highway, and to see that which was in plain sight, unless some reasonable excuse for not seeing is shown," we said in Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613: "It is elementary that one who attempts to cross a street between intersections without looking is guilty of such negligence as would bar a recovery as a matter of law. If he testifies that he did look, it is implied that he looked in such a manner that he would see that which was in plain sight, unless some reasonable excuse for not seeing is shown. The decisions of this court have consistently held to this rule. Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36; Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Whitaker v. Keogh, 144 Neb. 790, 14

N. W. 2d 596; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501." See, also, Kubo v. Fish, 152 Neb. 74, 40 N. W. 2d 270.

As stated in Seyfer v. Otoe County, 66 Neb. 566, 92 N. W. 756: "Where a certain fact or group of facts, if established, leaves no room for men of ordinary intelligence to differ as to the legal effect thereof, it is proper to instruct the jury what such legal effect is."

And in Lamberth v. Omaha & C. B. St. Ry. Co., on rehearing, 146 Neb. 217, 21 N. W. 2d 425: "The trial court is charged with the duty of informing the jury of the legal effect of facts which they find to be true from the evidence."

We think the trial court should have informed the jury of the legal effect of appellee's failure to perform this duty, if such they found to be a fact, and by failing to do so did not place the responsibility on appellee that was legally his.

Appellants contend that in submitting the issues of negligence the court placed upon appellant Staten a greater duty or responsibility than our holdings justify.

By instruction No. 1 the court advised the jury as follows: "Plaintiff (appellee here) * * * alleges that the defendant, Sam Staten (appellant here), was negligent in his operation of a truck in the following particulars: * * * 3. By failing to have said truck under control so that he could stop the same before colliding with the plaintiff."

By its instruction No. 3 the court advised the jury that the issues of fact submitted for their determination included, among others, the following: "2. Was the defendant Sam Staten negligent."

By its instruction No. 5 the court advised the jury: "You are instructed that the fact that an accident happens raises no presumption that either party thereto was negligent, but the specific acts of negligence alleged in the petition on the part of the defendant must be

proven by the plaintiff by a preponderance of the evidence."

By its instruction No. 6 the court advised the jury, insofar as here material, as follows: "You are instructed that the burden or (of) proof is upon the plaintiff to show, by a preponderance of the evidence, the negligence charged in the petition and that such negligence was the proximate cause of plaintiff's injuries."

We have held, in this respect, as follows:

" 'Complete control' is not required by the laws of Nebraska, as stated in the instruction. The required degree of care has been defined as follows:

" 'A driver of an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care.' Thrapp v. Meyers, 114 Neb. 689; De Griselles v. Gans, 116 Neb. 835.

" 'Reasonable control' by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in streets or intersections, and with pedestrians in the exercise of due care; but 'complete control' such as will only prevent a collision by anticipation of negligence or illegal disregard of traffic regulations, in absence of notice, warning or knowledge, is not required by the laws of Nebraska. The instruction given by the trial court in the present case imposed upon defendant too high a degree of control under the circumstances." Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767.

"One is required only to have his car under such reasonable control as to be able to avoid a collision with other vehicles whose drivers exercise due care. Complete control which is such as will prevent collision by the anticipation of negligence on the part of another in the absence of warning or knowledge is not required. Spomer v. Allied Electric & Fixture Co., 120 Neb. 399." Patterson v. Kerr, 127 Neb. 73, 254 N. W. 704.

There is no instruction which advises the jury of the foregoing with reference to the issue of negligence submitted in instruction No. 3 hereinbefore set out. In the absence thereof the instructions placed on the appellant Staten too great a duty or responsibility.

There is also discussed, with reference to instruction No. 6 as given by the court, the proposition that it does not fully inform the jury as to when it should find for the appellants.

Instruction No. 6 is in full as follows: "You are instructed that the burden or (of) proof is upon the plaintiff to show, by a preponderance of the evidence, the negligence charged in the petition and that such negligence was the proximate cause of plaintiff's injuries. If plaintiff has proven these facts, by a preponderance of the evidence, and you find that the plaintiff was not guilty of contributory negligence which was a proximate cause of his injury, then the plaintiff would be entitled to recover such damages as he has shown, by a preponderance of the evidence, to have sustained by reason of the negligence of the defendant; but if you find, from a preponderance of the evidence, that plaintiff has been guilty of negligence which contributed to his injuries, then plaintiff's right to recovery will be governed by Instruction No. 7."

We said in Fitzsimons v. Frey, *ante* p. 124, 43 N. W. 2d 531: "An instruction on the burden of proof which fails to inform the jury as to what their verdict should be in the event the evidence is equally balanced or preponderates in favor of the defendant is prejudicially erroneous."

It will be observed that the court informed the jury that the burden of proof was on the plaintiff to show, by a preponderance of the evidence, the negligence charged in the petition and that such negligence was the proximate cause of his injuries and that if he did so, without their finding that he was guilty of contributory negligence which was the proximate cause of his in-

juries, that appellee would be entitled to recover. Nowhere in this or any other instruction is the jury informed of what their verdict should be if the appellee has not sustained this burden.

The instruction does go on to state what they are to do if, from a preponderance of the evidence, they find appellee guilty of negligence which contributed to his injuries and the rule they are to apply, which is fully set out in instruction No. 7. But this does not relate to the question of what their verdict should be if they fail to find, by a preponderance of the evidence, that appellants were guilty of negligence. It relates to the question of contributory negligence only after they have found appellants guilty of negligence which was the proximate cause of appellee's injuries.

We find the court failed to fully instruct the jury as to when they should find for appellants.

In view of the foregoing appellants are entitled to a new trial. We therefore reverse the judgment of the trial court and remand the cause with directions for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.