ANNIE ZELENKA, ADMINISTRATRIX, APPELLEE, v. UNION STOCK YARDS COMPANY, APPELLANT.

FILED OCTOBER 22, 1908. No. 15,320.

1. Negligence: CONTRIBUTORY NEGLIGENCE. The negligence of one who carelessly places himself in a position exposed to danger cannot as a matter of law be said to be the proximate cause of an injury, if his position was discovered in time to avoid the injury by the use of reasonable care, and such care was not exercised. The third point in the syllabus of *Chicago, B. & Q. R. Co. v. Lilley*, 4 Neb. (Unof.) 286, disapproved.

2. Railroads: NEGLIGENCE: QUESTIONS FOR JURY. In an action charging the defendant with negligently operating its engine so as to cause the death of the plaintiff's intestate, where the evidence

as to whether the defendant might, after the discovery of the dangerous position in which the deceased had placed himself, by the exercise of reasonable care, have prevented the injury is such that different minds might honestly arrive at different conclusions, the question is properly submitted to the jury.

3. Appeal: INSTRUCTIONS: HARMLESS ERROR. Instructions, awkward in form and ungrammatical, are not for that reason prejudicially erroneous, unless it appears that the same were likely to mislead the jury. Where different instructions are given upon the same point they should be considered together; and if, so considered, they fairly submit the case, it will not be reversed for defects in any one instruction.

4. Evidence: OPINIONS OF EXPERTS. Where the question is within what distance an engine running at a given rate of speed can be brought to a stop, such question is within the rule that, as to any point of science or art, the opinions upon that point of persons specially skilled in any such matter are relevant facts.

5. Witnesses: CROSS-EXAMINATION. While ordinarily it is not permitted to cross-examine a witness upon a matter not related to his testimony in chief, this does not mean that the cross-examination must be confined to questions asked upon the direct examination, but rather to the subject matter of his examination in chief.

6. Appeal: EVIDENCE ON IMMATERIAL QUESTION. Where the cause of death is admitted by the pleadings to have been a physical injury, the question whether death resulted from shock or from morbid changes in the vital functions is immaterial; and the judgment will not be reversed for the reception of evidence upon this point, unless it can be pointed out in what manner the same was prejudicial to the party objecting thereto.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*E. R. Leigh* and *Byron G. Burbank, contra.*

CALKINS, C.

The defendant is a corporation engaged in the business of maintaining stock yards at South Omaha in this state. The conduct of its business requires the moving of railroad cars from place to place in said stock yards, over

Zelenka v. Union Stock Yards Co.

tracks provided for that purpose, for which the defendant employs some 12 or 14 locomotive engines, with the crews necessary to operate the same. The plaintiff's intestate, Philip Zelenka, was a car oiler and repairer, whose duties required him to be in the defendant's yards; and on the 13th day of November, 1905, while walking along and upon one of the railroad tracks in said yards, he was struck by one of defendant's engines, which was passing along said track, and received injuries from which he shortly afterwards died. The plaintiff brought this action to recover damages for his death, alleging that the same was due to the negligent operation of said engine. The jury found for the plaintiff in the sum of $2,250, and from a judgment upon this verdict the defendant appeals.

1. It was conceded that the deceased carelessly placed himself in a dangerous position; but the jury were told, in substance, that if his peril was discovered by the defendant in time to have avoided the injury by the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the proximate cause of the resulting injury. The soundness of this doctrine is severely criticised by the defendant, who urges that it is inconsistent with the doctrine of contributory negligence which obtains in this state, and quotes in support of his position extracts from the opinion of AMES, C., in *Chicago, B. & Q. R. Co. v. Lilley,* 4 Neb. (Unof.) 286. In the rehearing of the case the conclusion reached in the first opinion was adhered to, upon the sole ground that the evidence was insufficient to establish the fact that the defendant might have avoided the injury by the exercise of reasonable care on its part after discovering the dangerous position in which the deceased had placed himself; and we do not therefore regard the case as authority for the position contended for by defendant. The doctrine there questioned was definitely approved in *Omaha Street R. Co. v. Larson,* 70 Neb. 591, in an opinion by OLDHAM, C., in which AMES, C., concurred. The learned commis-

36

sioner in writing the opinion reviewed the decisions in this and other states, and the doctrine is too firmly adopted here to be further questioned. It has recently been re-iterated by the United States supreme court (*Chunn v. City & Suburban Railway*, 207 U. S. 302), and we believe is generally sustained by the great weight of authority.

2. It is, however, contended that the evidence in this case was insufficient to sustain a finding by the jury that the defendant's agents and servants, after discovering the danger in which the deceased had placed himself, might, by the exercise of reasonable care, have avoided the injury which resulted, and that the court therefore erred in refusing to direct a verdict for the defendant. It appears that the engine was moving north along one of the tracks in the yard, with the tender in front, and hauling one car. The train crew was composed of Mr. Wonder the foreman, the engineer, the fireman and one brakeman. The engineer and fireman were at their respective places in the cab of the engine, while the foreman Wonder was stationed at one corner of the tender upon the footboard, and the brakeman at the other, on the front of the train as described. The position of the tender obstructed the sight of the engineer, and he was compelled to rely upon signals given by the foreman and brakeman, who were riding where they had a full view of the track before them. The engine was moving at the rate of six miles an hour, and the deceased was first discovered walking along an adjoining track at the rate of about three miles an hour. Both the foreman and brakeman discovered the deceased when about 200 feet from the engine. Up to this point there seems to be no dispute about the facts; and the principal discrepancy in the testimony of the witnesses concerning what occurred thereafter is in their estimates of time and distance. The foreman testifies that, when the engine came within about 30 feet of the deceased, he stepped upon the track along which the engine was moving, and that, as he did so, the foreman shouted to him; that the deceased did not seem to hear the first shout, which was

immediately repeated, and that thereupon he turned and apparently discovered the engine; that he tried to pass over the track but was struck by the footboard on the end of the tender, and thrown down upon the bed of the track, rolled under the footboard of the tender, and in that position was dragged 20 feet or more. He testified that immediately as he shouted he gave the stop signal, and that the brakeman, standing on the other side, also gave the stop signal. The engineer did not see the deceased at all, and testifies that he reversed the engine and applied the brakes on account of hearing the fireman shout, "Look out!" for the second time. It appears from the testimony of some of the witnesses that this engine, while being operated at the speed at which it was then moving, should be stopped within the distance of 6 feet, and the engineer himself admitted that it could be stopped in less than 15 feet. According to the testimony of the witnesses most favorable to the plaintiff's contention, the engine ran from 20 to 30 feet after the danger signals were given, and about the same distance after it struck the deceased. Other witnesses testified that the deceased was much nearer the engine when he stepped upon the track. If it is true that this engine might have been stopped within 6 to 15 feet, and that it ran from 40 to 60 feet after the danger signals were or should have been given, it would seem that this could only be explained upon the theory that there was an unjustifiable delay in giving, watching for or acting upon the signals. Whether, after the discovery of the dangerous position in which Zelenka had placed himself, the engine could, by the use of reasonable care, have been stopped in time to avoid the injury was a question upon which different minds might honestly come to different conclusions, and was therefore a question for the jury to decide, and the court did not err in refusing defendant's request to direct a verdict in its favor.

3. The instructions of the court are severely criticised; the defendant's principal objection being directed to instruction numbered 8, given by the court on its own mo-

tion, which was as follows: "One should use reasonable diligence and caution, and especially in places of extra danger, in looking out for his own safety, and, if one is negligent in his own behalf, he cannot complain of the negligence of another, if the negligence of both, acting together, *approximately* contributes to his injury. This, however, does not admit of one's being run down by an engine because he has carelessly placed himself in a position of danger in front of an engine, and he being unaware of the engine's approach, if those in charge of the engine, after knowing of the presence of the one in front of it, and that he is apparently unaware of his peril, can, by the use of ordinary care in the manipulation of appliances for such purpose, stop the engine and thus avoid the injury. There could be no recovery, however, where the act of placing one's self in a place of peril was concurrent with acts of negligence of those in charge of the engine. In order that the one injured may complain of his injuries, who has carelessly placed himself in a position of peril, he must make it appear by a preponderance of the evidence that, after he had unwittingly placed himself in such position, the other, by the use of ordinary care and caution in his behalf, knowing of his situation or reasonably being charged with such knowledge, might have prevented his injury." The foregoing instruction is not a model of clear and concise statement. The judge, evidently by a slip of the pen, used the word "approximately" when he meant "proximately," in the first sentence of the instruction, which made that paragraph meaningless. Some of the succeeding sentences are involved in style; but we have long ago held that instructions are not prejudicially erroneous because awkward in phraseology or ungrammatical, provided that their meaning is clear and not likely to be misunderstood by the jury. *Langdon v. Wintersteen*, 58 Neb. 278. We have often held that instructions must be taken together and considered as a whole, and this instruction should therefore be considered in connection with the others given upon the same point.

It was followed by instruction numbered 9, in the words following: "It was the duty of the ones in charge of said engine that struck the deceased to use such means as was in their power to stop said engine, after it was apparent to them that the deceased was in a place of peril, unconscious of said peril, and that, unless said engine was stopped, deceased was liable to be injured. A failure to use ordinary care to so stop said engine by the immediate use of appliances at hand, after knowing of the dangerous position of the deceased to said approaching engine, or that there was an urgent reason for stopping said engine, would be negligence. After knowing of the dangerous situation of one in peril, or that there is reasonable grounds to believe one may be in peril, a reasonable use of appliances at hand for the purpose of stopping machinery, and thus avoiding the peril of the one threatened, is absence of negligence. In considering whether or not the agents and servants of defendant were negligent in the manner complained of by the plaintiff, you will consider all the facts and circumstances of the case bearing thereon and therein; the manner of the deceased's approach and entering upon said track over which said engine was proceeding; the fact of the deceased being an employee at said place; his acquaintance with the work of the yard; the fact that he was known to said trainmen; the speed of the engine that struck him; the conditions of the weather; the ringing of the bell; the distance in front of said engine of the deceased stepping upon the track; the efforts made by the trainmen to attract his attention; his actions at such time; signals and communications to the engineer in charge of the engine; and efforts made by the engineer by use of his appliances to stop said engine, and all the facts and examinations bearing thereon, disclosed by evidence." This instruction makes clear much that was obscure in the preceding one, and we think the two, taken together, were not likely to mislead the jury upon the essential point thereof; but the defendant tendered, upon this question, another instruction, which was

given by the court, in the words following: "You cannot infer that the defendant was negligent merely because the defendant's engine ran upon Philip J. Zelenka and injured him so that he died. But the burden rests upon the plaintiff to establish by a preponderance of all the testimony that the defendant negligently and carelessly ran upon and injured Zelenka after he was seen upon the track upon which the engine was running. All persons connected with the engine crew had the right to assume that Zelenka, who was known to them to be employed in the stock yards as a car repairer and oiler, would appreciate the danger of going upon the tracks of the defendant and walking thereon, and a mere failure to stop the train after Zelenka was seen thereon does not create a presumption of negligence, and, to find the defendant negligent in that regard, the burden rests upon the plaintiff to show by a preponderance of the testimony that the defendant's engineer failed in the exercise of reasonable care to bring the engine to a stop as quickly as he could after he was advised of the emergency or under the circumstances should have known of it." This instruction served to explain whatever obscurity existed in those preceding it, and we are satisfied that the three, taken together, were as favorable to the defendant as the law permitted.

Complaint is made of the court's action in giving other instructions on its own motion, and of its refusal to give certain instructions tendered by the defendant. The objections to the other instructions were of the same character, although less serious than those made to instruction numbered 8. The instructions tendered and refused related to the same subject, and are disposed of by the conclusion that the three instructions quoted, considered together, fairly state the law of the case.

4. The defendant complains of the admission of testimony of witnesses who were permitted to give an opinion as to the distance within which the engine in question might have been brought to a stop. These witnesses ap-

pear to have been familiar with and to have had experience in running this particular engine. The argument of the defendant does not disclose the legal nature of the objections to their testimony, but seems to be directed against its veracity and probability. It is a general principle that, where there is a question as to any point of science or art, the opinions upon that point of persons specially skilled in any such matter are relevant facts. Stephen, Digest of Evidence, ch. 5, art. 49. We think the question of the distance required to bring a locomotive engine to a stop is within the rule stated, and that an opinion concerning the same may be properly given by a witness shown to be skilled in the art of handling such engine.

5. William Metz, the brakeman who was standing on the footboard of the tender, was called as a witness, and testified concerning the accident. He stated that he saw the deceased step onto the track about 8 feet ahead of the engine; that he "hollered," and turned around and put his arms in the hind railing to protect himself from being pulled under the engine, and that he did not see Zelenka at the moment he was struck, but that he was the first man to reach him after the injury. On the cross-examination he testified that, after turning and taking hold of the rail, he saw no more of Zelenka until his head appeared under his feet. He was then asked the following question: "And you saw his head in that condition until the train slowed down and stopped?" This was objected to by the defendant as not being a proper cross-examination; and, the court having overruled the objection, its action is now urged as error. In this state the strict rule of cross-examination has been adopted, and it is not ordinarily permitted to cross-examine a witness upon a matter not related to his testimony in chief, simply because such matter is relevant to the issues. This does not, however, mean that a cross-examination must be confined to the questions asked upon the direct examination. Any question concerning the matter which is the subject of the direct ex-

amination may be inquired into. In this case the witness had sought to give a history of the circumstances of this accident as observed by him, and the fact that he failed to mention some of them on the direct examination does not preclude the right to bring out such circumstances on cross-examination.

6. The defendant assigns error of the court in permitting a witness, Dr. Shindel, to testify that in his opinion the inflammation of the wound, due to infiltration of sand and dirt, caused the death of Zelenka. The answer admits that the death of Zelenka resulted from the injury he received while attempting to cross one of defendant's tracks, and it would follow that, if the defendant was responsible for the injury, it was responsible for the death, and that the question whether death resulted from the shock of the accident or from some morbid change in the exercise of vital functions induced by the injury would be immaterial. We cannot see how the defendant could be prejudiced by the introduction of such testimony, and the error in the introduction thereof, if error there was, was error without prejudice.

We therefore recommend that the judgment of the district court be affirmed.

Root, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.