**Ismay MITTLIEDER, Special Administrator of the Estate of Elmer R. Ochsner, Deceased, Appellant,**

v.

**CHICAGO AND NORTHWESTERN RAILWAY COMPANY, a Corporation, Appellee.**

No. 19314.

United States Court of Appeals
Eighth Circuit.

June 23, 1969.

Martin A. Cannon, of Matthews, Kelley, Cannon & Carpenter, Omaha, Neb., for appellant, and filed brief.

Harry B. Otis, of Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., for appellee, and filed brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Elmer Ochsner of Omaha, Nebraska, was killed when the automobile in which he was a passenger was struck by a freight train. His special administrator brought a proper diversity action for wrongful death against the Chicago and Northwestern Railway Company. A jury denied recovery. Post-judgment, the trial court denied the administratrix's motion for a new trial. On a timely appeal from the judgment, Ochsner's administrator contends primarily that the trial court erred in submitting the issue of Ochsner's contributory negligence to the jury and it erred in rulings on admissibility of certain testimony of expert witnesses.

The railroad engineer is the only surviving eye-witness to the tragedy. Ochsner, his wife, another passenger and the driver, Glen Haney, all died instantly. Testimony and exhibits establish that on August 31, 1965, at about 2:30 A.M., Haney's stationwagon was eastbound on a two-lane paved highway in Douglas County, Nebraska, when it was struck broadside by defendant's northbound train. The train consisted of two diesel engines, twelve empty boxcars and a caboose, and was traveling on a generally level north-south track intersecting the highway at approximately right angles. On the south shoulder of the highway, immediately west of the track, was the usual cross-buck warning sign. East of the track and on the north shoulder, facing westbound traffic, was a combination cross-buck sign with an electric "wigwag" signaller containing two-way lights which flash to warn both eastbound and westbound traffic. The head brakeman testified that he had noticed the wigwag signal operating when the train was about 100 to 150 feet from the crossing and that he heard the signal bell as the train reached the intersection. For eastbound automobile traffic approaching the crossing, the view south is obstructed by trees which parallel the track. Before reaching the track, this traffic must cross an overhead-type bridge which terminates about 115 feet

west of the track. Visibility to the south continues obstructed to a point about 100 feet west of the track.

The engineer testified that he first saw the Ochsner vehicle as it came off the bridge. The train was then about 50 feet from the crossing and the engineer commenced emergency braking procedures. The physical evidence demonstrated that the lead engine impaled the right side of the car on its front coupler and pushed the automobile 461 feet along the track before both the locomotive and the auto came to a stop.

At the trial, plaintiff specified several grounds of negligence, including charges that the train's headlamp was not lit, that the train was traveling at an excessive speed under the circumstances, and that the railroad maintained a dangerous crossing in that the flashing signal located on the far side of the track would be misleading to an eastbound motorist, driving at night, since it might cause him to stop on the track.

Plaintiff introduced testimony that the train had been seen at another crossing near the accident and, at that time, the headlamps on the diesel locomotive were not lit. Plaintiff also called an expert witness who testified that in his opinion the automobile had stopped on the track before it was struck by the train. Such testimony supported plaintiff's theory of negligence and causation that the farside signaller, the hard-to-see rails and the visual obstructions would cause an eastbound motorist to come to a stop on the railroad tracks just short of the flashing signal. Although plaintiff attempted to produce expert testimony that the train was traveling in excess of the railroad-imposed speed limit of twenty-five miles per hour, the trial court refused to admit such evidence in the form presented.

The defendant, while denying negligence, affirmatively asserted that plaintiff's decedent was guilty of contributory negligence in riding as a passenger in an automobile when he knew or should have known that the driver of the vehicle was intoxicated. Defendant made no motion for a directed verdict at the close of the case and all issues were submitted to the jury for its general verdict.

### I.

The parties stipulated that the sample of blood taken from the deceased driver after the accident and subjected to chemical analysis contained .22% alcohol by weight. Dr. Archibald Ross McIntyre, Professor of Pharmacology at Nebraska Medical College testifying as an expert witness on behalf of the defendant, stated his opinion that all persons "could be said to be intoxicated" with a minimum concentration of .10% alcohol in the blood. Over objection, he also testified that a person with .22% blood-alcohol content "would not be in a state to drive an automobile".

Neither party produced any testimony concerning activities of the occupants of the automobile prior to the accident. Thus, the only evidence upon which the jury might find Ochsner guilty of contributory negligence was the fact of his presence in the automobile following the accident and the fact that laboratory tests disclosed that the driver was intoxicated. Defendant urges that such evidence was sufficient ground for a jury to draw a permissible inference that plaintiff's decedent negligently remained in the car though he knew the driver was intoxicated.

Nebraska law recognizes that a passenger who rides with a drinking driver may be guilty of contributory negligence. The rule was most recently stated in Schaffer v. Bolz, 181 Neb. 509, 149 N.W.2d 334, 338 (1967):

"A guest may be guilty of contributory negligence, or assumption of risk, by riding or continuing to ride with a driver who he knows, or in the exercise of ordinary care and diligence should know, is so intoxicated that he is unable to operate the vehicle with proper prudence or skill. * * * But knowledge that the driver has been drinking does not necessarily bar the recovery

by a guest. The rule contemplates a situation where the driver is really and perceptibly under the influence of liquor and actual ascertainable intoxication exists to such an extent that the guest is charged with knowledge of it. * * * " (Citations omitted.)

■ The defendant was required to carry the burden of proving that Ochsner was guilty of contributory negligence. Giebelman v. Vap, 176 Neb. 452, 126 N.W.2d 673, 678 (1964). When circumstantial evidence is relied upon to prove the affirmative of the issue, the Nebraska Supreme Court has articulated several standards. In Howell v. Robinson Iron & Metal Co., 173 Neb. 445, 113 N.W.2d 584, 587 (1962), the Court said:

"The burden of establishing a cause of action by circumstantial evidence requires that such evidence, to be sufficient to sustain a verdict or require submission of a case to a jury, shall be of such character and the circumstances so related to each other that a conclusion fairly and reasonably arises that the cause of action has been proved."

In *Howell*, two other guideline rules were noted:

" 'Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged.' Gilliland v. Wood, 158 Neb. 286, 63 N.W.2d 147."

" 'In order for circumstantial evidence to be sufficient to require the submission of an issue of negligence to a jury it must be such that a reasonable inference of negligence arises from the circumstances established. If such evidence is susceptible to any other reasonable inference, inconsistent with the inference of negligence on the part of the party charged, it is insufficient to carry the case to the

jury.' Bedford v. Herman, 158 Neb. 400, 63 N.W.2d 772."

See also, Petracek v. Haas O. K. Rubber Welders, Inc., 176 Neb. 438, 126 N.W.2d 466, 470 (1964).

More recently, in Raff v. Farm Bureau Ins. Co., 181 Neb. 444, 149 N.W.2d 52, 56 (1967), the Court observed:

"Conjecture, speculation, or choice of possibilities is not proof. There must be something more which will lead a reasoning mind to one conclusion rather than another."

And in Norcross v. Gingery, 181 Neb. 783, 150 N.W.2d 919, 921 (1967):

"Where several inferences may be drawn from the facts proved, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff may not sustain his position by a reliance alone on the inferences which would entitle him to recover."

In the present situation, unlike that in other Nebraska drinking-driving cases, e. g., Schaffer v. Bolz, *supra*; Kaufman v. Tripple, 180 Neb. 593, 144 N.W.2d 201 (1966); Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82, 149 A.L.R. 1041 (1943); and McGrath v. Nugent, 133 Neb. 237, 274 N.W. 549 (1937), we have no direct testimony nor circumstantial evidence indicating the extent to which the passenger had observed the driver's condition except the fact that the passenger was physically present in the car at the time of the accident. There is no evidence that the driver objectively displayed his intoxication to his passenger; no evidence that Ochsner had an opportunity to know of the driver's condition if, indeed, the driver would manifest his allegedly intoxicated state to any extent. In order to justify the submission of the contributory negligence issue to the jury, one must be able to say that Ochsner's presence in the car with a driver who is proven to have been intoxicated justifies a reasonable conclusion that Ochsner knew or should have known that Haney was not in fit condition to drive the automobile.

In his testimony, Dr. McIntyre admitted that there is a variation in the amount of alcohol which may be tolerated by different individuals. A finding that plaintiff's decedent ought to have been aware that it was dangerous for him to ride with Haney rests on sheer speculation. One can as easily rationalize on the basis of the record in this case that Haney did or did not show the effects of the liquor he had drunk; [1] that Ochsner did or did not see his driver drinking; that Ochsner did or did not have a reasonable opportunity to learn of his driver's actual intoxicated condition.[2] Neither an affirmative conclusion attributing knowledge of the driver's acts to Ochsner nor a contrary conclusion has evidentiary support. In determining the sufficiency of the evidence to submit the issue to the jury, the Nebraska standard enunciated in Howell v. Robinson Iron & Metal Co., *supra,* that the conclusion must be "reasonably" supported by circumstantial evidence is equivalent to the federal standard applicable in like circumstances that the conclusion should be within the range of "reasonable probability".[3]

1. See, for example, Strand v. Village of Watson, 245 Minn. 414, 72 N.W.2d 609, 615 (1955), in which the Minnesota Supreme Court explained the distinction between "intoxicated" and "obviously intoxicated" thusly:

   *"The word 'intoxicated' is one of those terms used to depict a physical condition which probably defies precise definition.* It may have different meanings * * * in connection with different situations. The degree of intoxication varies with the amount of alcohol absorbed in the blood stream, and just when the point of absorption is reached, where it can be said that the person is so intoxicated that it is unlawful to sell him more liquor, cannot be stated with mathematical certainty. The outward manifestation of intoxication varies with individuals as it does with the physical condition of the individual. Even the chemical expert called by plaintiff was willing to admit that, with the amount of alcohol found by the urinalysis of Martinson, some people would not show the effects of it outwardly" (Emphasis added.)

   The Minnesota Court felt that a urine test disclosing an alcoholic concentration of .27% by weight is not sufficient in and of itself to establish obvious intoxication.

   Text authorities agree that different individuals will respond differently at the same blood-alcohol concentration dependent upon their psychological makeup and, most importantly, on their drinking habits. See, AMA Manual, Alcohol and the Impaired Driver, at 10–11 (1968); 2 Stewart & Stolman, Toxicology, Mechanisms and Analytical Methods, at 111–112 (1961).

2. See, e. g., Mann v. Bowman Transportation, Inc., 300 F.2d 505 (4th Cir. 1962) (Though strong odor of alcohol emanated from the car following an accident, the issue of passenger's contributory negligence is properly withdrawn from the jury when evidence is lacking that the passenger, who was killed, knew or suspected that the driver had an impaired physical condition.); Enos v. Montoya, 158 Cal.App.2d 394, 322 P.2d 472 (1958) (Contributory negligence cannot be charged to a sleeping passenger who is unaware of the drinking driver's reckless acts.); Duffy v. Flynn, 72 Nev. 278, 302 P.2d 967 (1956) (A slumbering passenger who is never awakened prior to the accident is not chargeable with knowledge that his driver stopped en route and drank enough liquor to become thoroughly intoxicated and, thereafter, continued to drive.); Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576 (1951) (Evidence that youthful driver had sufficient blood-alcohol concentration *to impair his judgment* does not furnish basis to submit assumption of risk defense to a jury as against a passenger who was killed in the accident when there is no evidence the passenger had knowledge of the driver's intoxicated condition.).

3. We approved that articulation of the federal rule, as expressed in Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958), cert. denied, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958), in Twin City Plaza, Inc. v. Central Surety & Ins. Corp., 409 F.2d 1195, fn. 8 (8th Cir. (1969). That rule reads:

   "The old notion that a jury should not be allowed to draw any inference from circumstantial evidence, if the one is as probable as the other, has fallen into discard and has been replaced by the more sensible rule that it is the province of the jury to resolve conflicting inferences from circumstantial evi-

In instructing on circumstantial evidence, the trial court submitted the following standard to the jury:

"You will understand that the question of negligence may be proved by circumstantial evidence. All that the law requires is that the established facts and circumstances, together with the inferences which may be legitimately drawn from them shall indicate with reasonable certainty the negligent act or acts complained of."

On any of the foregoing standards, there was no evidence upon which a jury could reasonably conclude either that this passenger was aware of the driver's intoxicated condition or that the passenger was not aware of that condition. See, Twin City Plaza, Inc. v. Central Surety & Ins. Corp., 409 F.2d 1195, fn. 8 (8th Cir., 1969); Norcross v. Gingery, *supra;* Raff v. Farm Bureau Ins. Co., *supra;* Howell v. Robinson Iron & Metal Co., *supra;* Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir. 1958). It is unnecessary for our resolution of the issue to determine whether or not the state or federal standard should apply to this jury issue. Cf. Twin City Plaza, Inc. v. Central Surety & Ins. Corp., *supra;* Burger Chef Systems, Inc. v. Govro, 407 F.2d 921, fn. 4 (8th Cir., 1969); Grand Island Grain Co. v. Roush Mobile Home Sales, Inc., 391 F.2d 35, 40 (8th Cir. 1968); Farmers Cooperative Elevator Ass'n non-stock of Big Springs, Neb. v. Strand, 382 F.2d 224 (8th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); Wray M. Scott Co. v. Daigle, 309 F.2d 105, 109 (8th Cir. 1962).

■ Where contributory negligence is pleaded as a defense, but there is no evidence to support that defense, it is prejudicial error to submit that issue to the jury. Giebelman v. Vap, *supra.* See also, Brown v. Kaar, 178 Neb. 524, 134 N.W.2d 60, 63 (1965); Ripp v. Riesland, 176 Neb. 233, 125 N.W.2d 699 (1964). We cannot overlook the erroneous submission of contributory negligence on the basis that the evidence in this case required a defense verdict as a matter of law. Plaintiff's case, though weak, was sufficient to submit to the jury the issue of the railroad's negligence.

## II.

The appellant also attacks certain evidentiary rulings of the lower court.

(1) The trial court correctly ruled that there was insufficient foundation to permit W. F. Weiland, a former Professor of Mechanical Engineering at the University of Nebraska and a specialist in accident reconstruction, to opine on the stopping distance of a train traveling at a speed of twenty-five miles per hour. The following question was asked:

"If a vehicle has brakes which produce friction between the rail of a track and a railroad train, if it is going 25 miles an hour and the brakes are applied, after the brakes are applied, how far will it move before it stops?"

An objection was made on the basis of insufficient foundation and sustained. The supplementary offer of proof was that the witness would testify, according to plaintiff's counsel, as follows:

"[T]hat at 25 miles an hour on a level track, a train would stop in 60 to 80 feet, and I would further ask him, then, if a train stopped in 461 feet whether he was able to state assuming it had an effective braking system, what the speed of that train would have been, and he would testify that he could draw that conclusion and his answer would be 45 to 55 miles an hour."

■■ Although he was familiar with general braking principles, Professor Weiland had no actual experience in railroading, but relied on coefficient-of-sliding-friction data supplied from a standard engineering treatise. By using a kinetic-energy formula, he would attempt to mathematically determine the stopping distance of a train. Such a deter-

---

dence. Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." 259 F.2d at 266.

mination requires an assumption that the train in question slid along the track in coming to a stop and that motion retardation is immediate, determinable by a specific coefficient of friction, upon application of the train brakes.[4] No evidence supported these assumptions and without necessary foundational data, Professor Weiland's opinion would be inadmissible speculation.[5]

(2) As rebuttal, the plaintiff called Mr. Emory Anderson, a well-qualified railroad engineer with more than fifteen years of experience as an engineer and with specialized experience, as an operator of a "switching" engine, in stopping trains traveling at speeds up to thirty-five miles per hour. He was asked the following question:

"[D]o you have an opinion based on reasonable certainty as to the distance that is necessary to bring a diesel train, with two diesel traction units, 12 empty boxcars, and a waycar to a stop on a track which is practically level just going uphill to the extent of $\frac{1}{10}$ of one per cent?"

After an affirmative answer, an objection was made to the witness' stating his opinion. The objection was predicated on the fact that he had operated only switching engines in the stock yards and not over the road.

The objection was not well taken. At the time the testimony was offered, other witnesses, including those called by the defendant, had indicated that the braking systems on all trains operated in generally the same way and that all trains are subject to similar principles of physics in coming to a stop. Whether the witness operated trains, concededly similar to that involved in the instant litigation, on long trips or in

4. The text work relied upon by Professor Weiland, Marks', Mechanical Engineers' Handbook, 6th Ed., McGraw-Hill, 1958, pp. 3–39 to 3–43, discusses coefficients of friction in retardation or stopping of motion. No attempt is made to relate the use of the coefficient of friction of steel wheels on rail with the total process of braking a train. It is common knowledge that overall stopping distance includes (1) reaction time, plus (2) distance traveled during braking or retardation. We have previously noted that, in railroading, there is generally a time lag between application of the brake handle and pressure build-up for maximum braking effect. See, Emery v. Northern Pacific Railway, 407 F.2d 109 (8th Cir., No. 19275, February 17, 1969), in which an engineer testified to four-second time lag or build-up time for brakes to take effect. Failure to consider braking lag time in an attempt to mathematically compute the stopping distance of a train will produce gross error. For example, Professor Weiland's proposed answer was that the train would stop in 60 to 80 feet, yet in four seconds of possible braking lag time, a train traveling at 25 miles per hour would move about 150 feet.
For an excellent review of data needed to estimate stopping distance of a train using various formulae and appropriate coefficient of friction factors at different speeds and under varying circumstances, see L. K. Sillcox, Mastering Momentum, Library of Congress Catalog No. 55–7851 (1955), and an earlier work, Principles and Design of Foundation Brake Rigging, published by Westinghouse Air Brake Co., Pittsburgh, Pa. (1920).

5. In Twin City Plaza, Inc. v. Central Surety & Ins. Corp., supra, Judge Lay correctly observed:
"When basic foundational conditions are themselves conjecturally premised, it then behooves a court to remove the answer from one of admissible opinion to one of excludable speculation. Thus, a court may exclude evidence where an expert is asked for speed of a vehicle based upon skid marks, when foundational evidence showing that the skid marks belong to the car in question is totally lacking. * * * However, when such basic, relevant conditions are proven and the witness possesses sufficient qualifications, the answer is best received for whatever value it may ultimately have." (Citation omitted.)
The Supreme Court of Nebraska enunciated the rule similarly, in the early case of Souchek v. Karr, 78 Neb. 488, 111 N.W. 150, 152 (1907):
"The logical conclusion drawn from these statements of the rule is that one offering an opinion as an expert on any particular fact must show a knowledge of the fact, gained either from practice or study, or both, which is beyond common information or mere observation. When such information is shown, the better practice is to admit the evidence, leaving its weight to be determined by the triers of the fact."

switching operations in a freight yard affected the weight but not the admissibility of the testimony. There is little doubt, based on the record in this case, that Anderson's experience qualified him to express an opinion.[6] The worth of that opinion could have been scrutinized on cross-examination. Twin City Plaza, Inc. v. Central Surety & Ins. Corp., *supra*. The ruling of the trial court was technically correct, however since counsel had neglected to specify the speed of the train as a part of the hypothetical question.

(3) There is no merit to appellant's contention that Dr. McIntyre, whom the appellant admits is a highly qualified expert in toxicology and pharmacology, should not have been allowed to testify as to the degree to which the driver's ability to operate the car was impaired. The trial court properly permitted Dr. McIntyre to testify as to his opinion concerning the relationship of the amount of alcohol in the driver's blood to the driver's general ability to operate an automobile. The generality of the witness' answers may have been clarified on cross-examination if plaintiff's counsel had desired to do so. Appellant cites no authority in support of his assertion that such an expert ought not to be permitted to testify on the specific impairment of one's ability to drive an automobile based on the blood-alcohol test stipulated into evidence. Other errors assigned by plaintiff are without merit and did not prejudice a fair trial of the issues.

The improper submission of contributory negligence to the jury requires a new trial. The case is remanded for further proceedings in accordance with this opinion.

---

6. Train engineers, streetcar conductors and the like have been permitted to express an opinion on the stopping distance of locomotives, trains, streetcars and the like. See, Pollard v. Nicholls, 99 F.2d 955 (5th Cir. 1938); Fair v. Thompson, 240 Mo.App. 664, 212 S.W.2d 923 (1948); Fitzgerald v. Thompson, 238 Mo.App., 546, 184 S.W.2d 198 (1944); Anderson v. St. Louis-San Francisco Ry. Co., 63 S.W.2d 182 (Mo.App.1933); Schmidbauer v. Omaha & C. B. St. Ry. Co., 104 Neb. 250, 177 N.W. 336 (1920); Zelenka v. Union Stockyards Co., 82 Neb. 511, 118 N.W. 103 (1908). Cf. Swift v. Southern Ry. Co., 307 F.2d 315 (4th Cir. 1962). (A fireman, however, was not competent to testify to speed of a train.).