James S. TAYLOR, Individually and as Representative of the Estate of Linda Marie Taylor, Deceased, and as Father and next Friend of Cameron Taylor, Adam Taylor, and Benedict Taylor, Minors, Plaintiffs,

v.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY; Southern Pacific Transportation Company; Union Pacific Railroad Company; F.S. Altergott; A.M. Henson; W.J. Lacy; H.D. Fisher; and R.D. Bredenburg, Defendants.

Civ. A. No. 88–4036–S.

United States District Court, D. Kansas.

Aug. 31, 1990.

Harold W. Nix, Daingerfield, Tex., Thomas M. Stanley, Bankston, McDowell & Stanley, Houston, Tex., Winton A. Winter, Jr., Stevens, Brand, Lungstrum, Golden & Winter, Lawrence, Kan., for plaintiffs.

Mark L. Bennett, Jr., Bennett, Dillon & Callahan, Topeka, Kan., for St. Louis Southwestern Ry. Co., Southern Pacific Transp. Co., F.S. Altergott, A.M. Henson, W.J. Lacy, H.D. Fisher and R.D. Bredenburg.

Charles D. McAtee, Topeka, Kan., for Union Pacific R. Co. et al.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on three separate motions of defendant Union Pacific Railroad Company (hereinafter, "Union Pacific"), and one joint motion of all defendants, for determination of legal issues in advance of the October 1, 1990 trial setting in this matter and/or motions in limine.[1] Because the court finds that oral argument would not be of material assistance in its determination of this matter, defendant Union Pacific's request for oral argument is denied. D.Kan. 206(d).

This case results from an accident between a motor vehicle and a railroad train at a public railroad crossing on July 29, 1987. The Nissan pickup truck of the Taylor family was struck by an eastbound locomotive owned by the Southern Pacific Transportation Company and operated by the St. Louis Southwestern Railway Company, at a crossing owned and maintained by the Union Pacific in Williamstown, Kansas. In this action, plaintiffs allege that defendants were negligent in the following respects: allegedly failing to sound a horn or whistle and/or continuously ring a bell at least 1320 feet from the crossing, failing to keep a proper lookout, failing to make timely application of the brakes and failing to maintain the braking system on the lead locomotive, and failing to properly train the crew of the train. Specifically, plaintiffs

---

1. Because the court resolved the choice of law issue in favor of applying Kansas law in its June 1, 1990 Memorandum and Order, 131 F.R.D. 197, (denying plaintiff's motion for reconsideration of the court's earlier order denying remand), defendants' motion for a determination of the applicable law in this matter (i.e., Kansas or Texas), is moot. As another administrative matter, the court notes that the pretrial order states that the parties have stipulated to the dismissal of individual defendants Altergott, Henson, Lacy and Fisher. To date, however, no order of dismissal has yet been filed with regard to these defendants.

allege Union Pacific was negligent in failing to install automatic gates, signals or lights at the crossing, failing to maintain the crossing either in a reasonably safe condition or in accordance with its standard for crossings and failing to properly locate the whistleboard for trains approaching the crossing from west to east.

Defendants' joint motion for determination of law in advance of trial and first motion in limine seeks an order from the court prohibiting plaintiffs' expert witnesses, Marshall Wells and Virginia Tipton, who have served as railroad engineers, from testifying as to any opinions regarding stopping distances. Defendants make two arguments in favor of their motion. First, defendants generally allege that Wells and Tipton do not qualify as experts. Second, based on their respective deposition testimony, defendants contend that any opinion which these witnesses would give with regard to stopping distances required in this particular case would be too speculative to be admissible, citing *Ratterree v. Bartlett*, 238 Kan. 11, 21, 707 P.2d 1063 (1985).

Upon consideration of defendants' joint motion, the court finds that it should be denied at this time. The court finds that Wells and Tipton may, despite their lack of college education, qualify as experts under Rule 702 of the Federal Rules of Evidence by virtue of their knowledge, skill, experience or training. *See Mittlieder v. Chicago & Northwestern Ry. Co.*, 413 F.2d 77, 84 n. 6 (8th Cir.1969) (citing cases holding testimony of train engineers, streetcar conductors, and the like, admissible on the question of required stopping distances of locomotives, trains, streetcars and the like). With regard to defendants' second contention in their motion in limine, i.e., the allegedly speculative nature of Wells' and Tipton's expert opinions, the court finds that it prefers to rule on such objections as they arise in the context of trial. Therefore, the court finds that defendants' first motion in limine should be denied.

The court will grant, as unopposed, the first part of defendant's second motion in limine which seeks to prohibit expert witness opinion regarding the issue of whether the crossing in question was ultrahazardous. However, the court finds that the second portion of defendant Union Pacific's second motion in limine in which defendant asks the court to rule as a matter of law that the crossing in question was not extra hazardous or unusually dangerous should be denied as the court finds that this issue is essentially a question of fact to be determined by the jury. *See Waits v. St. Louis–San Francisco Ry. Co.*, 216 Kan. 160, 531 P.2d 22, 29 (1975).

In its third motion in limine, Union Pacific argues that certain evidence should be barred as subsequent remedial conduct. Specifically, Union Pacific asks the court to prohibit the introduction of evidence regarding repair or replacement of planking and roadbed, removal of a tree, installation of a stop sign, and signalization of the crossing, all of which occurred subsequent to the accident at issue here. Rule 407 of the Federal Rules of Evidence, which addresses the admissibility of subsequent remedial measures, provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The court finds that defendant's motion should be granted as to subsequent remedial measures taken by Union Pacific, such as the repair of planking and the subsequent signalization of the crossing. Fed.R. Evid. 407. The court, however, will deny defendant's motion in limine to exclude evidence of subsequent actions taken by Jefferson County, such as the removal of the "bushy" tree and the installation of the stop sign, since these actions were not remedial measures taken by defendant Union Pacific. *Wallner v. Kitchens of Sara Lee,*

*Inc.,* 419 F.2d 1028, 1032 (7th Cir.1969) (photos of subsequent repairs by bakery properly admitted against defendant conveyor manufacturer where manufacturer not responsible for the repairs); *Steele v. Wiedemann Machine Co.,* 280 F.2d 380, 382 (3d Cir.1960) (employee suing manufacturer could show non-party owner of machine replaced allegedly defective safety mechanism). *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 407[01] (1989); *see also* 23 C. Wright & K. Graham, *Federal Practice & Procedure* § 5825 (1980).

Defendant's third motion in limine also seeks to exclude two additional items: (1) a January 13, 1988 order of the Kansas Corporation Commission ("KCC"); and (2) plaintiffs' exhibit # 429, Kansas Railroad Safety Statistics for 1987. Because plaintiffs agree that the January 13, 1988 order is inadmissible under 23 U.S.C. § 409, the court will grant this portion of defendant's third motion in limine. Union Pacific also contends that plaintiffs' exhibit # 429, Kansas Railroad Safety Statistics for 1987, is inadmissible to the extent that the statistics include data subsequent to July 29, 1987, the date of the accident. Because the court is unable to discern from defendant's motion how these statistics fall within the terms of Rule 407, this portion of defendant's motion in limine will be denied at this time.

In its fourth motion in limine, defendant Union Pacific asks the court to determine, as a matter of law, that all issues with regard to railroad crossing safety, including signalization and approach grades, have been preempted by federal law. Union Pacific also asks the court for a determination that a federal statute, 23 U.S.C. § 409, precludes admission of any testimony, evidence, or any document from the Kansas Department of Transportation ("KDOT"), the Kansas Corporation Commission ("KCC"), Jefferson County or files and records from Union Pacific pertaining to evaluation of crossings undertaken as a part of an analysis to determine the necessity for, and priority of, any changes, modifications or upgrading of the approach to, and signalization of, crossings.

In their response to defendant's fourth motion in limine, plaintiffs ask the court to strike the affidavits of Benny D. Neaderhiser, Albert B. Cathcart, John B. Kemp, and Robert G. Cutter, presented by Union Pacific in support of its federal preemption arguments, because none of the affiants appear as witnesses on defendants' witness list and because none were subject to discovery. Rule 12(f) of the Federal Rules of Civil Procedure allows the court to order stricken from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." The granting of a motion to strike is within the discretion of the court. *FDIC v. Butcher,* 660 F.Supp. 1274, 1277 (E.D.Tenn. 1987).

Under Rule 43(e) of the Federal Rules of Civil Procedure, "when a motion is based on facts not appearing of record the court may hear the matter on affidavits." Rule 56(e) governs with regard to affidavits presented in connection with a summary judgment motion. That rule provides, in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....

Plaintiff has not cited, nor has the court discovered, any strict requirement that affiants used in connection with a motion must appear on a party's witness list; under Rule 56(e), affiants need only be "competent to testify to the matters stated therein." Also, as a practical matter, witness lists tend to be modifiable. Further, the court does not discern any unfairness in permitting Union Pacific to present these affidavits in connection with its motion. Therefore, the court will deny plaintiff's request that the affidavits be stricken.

Section 409, Title 23, United States Code provides:

### § 409. Admission as evidence of certain reports and surveys

Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identify-

ing (sic) evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

For purposes of defendant's motion, Section 409 makes inadmissible: (1) reports, surveys, schedules, lists or data, (2) compiled for the purpose of identifying, evaluating or planning the safety enhancement of potential accident sites or railway-highway crossings, (3) pursuant to Section 130 of Title 23 (providing, among other things, for state surveys of railway-highway crossings and federal funding for protective devices) or (4) for the purpose of developing any highway safety construction improvement project which may be implemented using Federal-aid highway funds. As one court has stated it, the purpose of Section 409 is "[t]o facilitate candor in administrative evaluations of highway safety hazards" by preventing a court from receiving records of such evaluations into evidence. *See Duncan v. Union Pacific Railroad,* 790 P.2d 595 (Utah Ct.App.1990), *review pending,* 134 Utah Adv.Rep. 37 (citing H.Conf.Rep. No. 100, 104th Cong. 1st Sess. 27, *reprinted in* 1987 U.S.Code Cong. & Admin.News 66, 156, 157).

Given the clear mandate of Section 409, the court finds that any "reports, surveys, schedules, lists or data" pertaining to the evaluation of crossings, including the crossing at issue here, undertaken pursuant to the safety enhancement-related purposes discussed in the statute, whether obtained from the Kansas Department of Transportation ("KDOT"), the Kansas Corporation Commission ("KCC"), Jefferson County or Union Pacific, are inadmissible.

The parties specifically dispute the applicability of this section to a "profile" of 12 crossings, including the crossing at issue in this case, taken by Larry Rudolph in March 1985. It is undisputed that Mr. Rudolph was the official with Union Pacific who handled public projects for crossing safety improvement such as signalization from late 1984 until late 1987. There is, however, some dispute regarding the circumstances under which Rudolph made the March 1985 profile and the purpose of his undertaking to profile the Williamstown crossing. Although defendant states that it filed a copy of Rudolph's deposition with the court for consideration in connection with its motion, the court is unable to locate either an order allowing the entire deposition to be filed or the deposition, or relevant portions thereof submitted by defendant as attachments. Thus, defendant's allegations regarding the circumstances of the 1985 profile are unsupported by evidence and the portions of Rudolph's deposition submitted by plaintiff do not resolve the dispute. Therefore, because the court cannot on the materials before it resolve the parties' factual dispute regarding the purposes for the Rudolph profile, the court cannot rule at this time that the profile is barred by Section 409.

The remaining issue before the court on defendant's fourth motion relates to the preemptive effect, if any, of the Federal Railroad Safety Act, 45 U.S.C. § 421 *et seq.* and the Highway Safety Act, 23 U.S.C. § 401 *et seq.* upon plaintiffs' claims that Union Pacific was negligent either with regard to signalization of, or approach grades to, the Williamstown crossing. To the court's knowledge, the specific issue of federal preemption with regard to railroad crossing warning devices has only been addressed by two federal appellate cases to date. In *Karl v. Burlington Northern, Inc.,* 880 F.2d 68, 76 (8th Cir.1989), the Eighth Circuit Court of Appeals rejected Burlington Northern's argument that the Federal Highway Safety Act and the Federal Railroad Safety Act preempted the plaintiff's common law negligence claims with regard to traffic control and warning devices at the crossing where the train/car collision occurred. The *Karl* court found

no case law and nothing in the legislative history to support Burlington Northern's argument. *Id.*

In the other federal appellate decision on point, *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir.1983), the Ninth Circuit Court of Appeals found that the Railroad Safety Act did not occupy the field of railway safety, but rather preempted only those state laws where the federal government had acted with respect to the particular subject matter. *Id.* at 1153. The appellate court further found that pursuant to the Act, the Secretary of Transportation, by adopting the Manual on Uniform Traffic Control Devices on streets and Highways, *see* 23 C.F.R. § 655.601 (1981), delegated federal authority to regulate grade crossings to local agencies. *Id.* at 1154. The Ninth Circuit further held that where the locality in charge of a particular railroad grade crossing has made no determination under the manual regarding the type of warning device to be installed at a crossing, no "federal" decision has been reached through the local agency and the railroad's duty under applicable state law is not preempted. *Id.*

Upon examination of the applicable case law and the parties' arguments, the court finds that it has no record presently before it which would allow it to determine, as a matter of law, that Union Pacific had no common law or statutory duty with respect to warning devices at the Williamstown crossing in July 1987. Therefore, the court will deny the federal preemption portion of Union Pacific's motion for determination of law and fourth motion in limine. The court further finds that Union Pacific has not demonstrated that the Kansas statute which governs approach grades, K.S.A. 66-227, is unconstitutional.[2] Therefore, this portion of defendant's fourth motion for determination of law will also be denied by the court.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for determination of law (Doc. 102) is mooted by the court's Memorandum and Order of June 1, 1990 (Doc. 114), and is hereby denied.

IT IS FURTHER ORDERED that the joint motion of defendants for determination of law in advance of trial and first motion in limine (Doc. 104) is denied.

IT IS FURTHER ORDERED that defendant Union Pacific Railroad Company's motion for determination of law in advance of trial and second motion in limine (Doc. 105) is granted in part and denied in part, as consistent with the above opinion.

IT IS FURTHER ORDERED that defendant Union Pacific Railroad Company's third motion in limine (Doc. 106) is granted in part and denied in part, as consistent with the above opinion.

IT IS FURTHER ORDERED that defendant Union Pacific Railroad Company's motion for determination of law in advance of trial and fourth motion in limine is granted in part and denied in part, as consistent with the above opinion.

---

2. Union Pacific contends that K.S.A. 66-227 is unconstitutional on several grounds, including that the statute is "unconstitutionally vague and ambiguous, is neither economical nor practical, and places a burden on the railroads which is, in many instances, engineeringly impossible, economically unfeasible, and imposes an unwarranted and impermissible interference on interstate commerce." Defendant Union Pacific Railroad Company's Motion for Determination of Law and (Fourth) Motion in Limine (Doc. 107) at 22-23. The court finds no basis for granting defendant's motion on any of the grounds urged.